(101 So. 303)

### SNODDY v. STATE.  (6 Div. 527.)

(Court of Appeals of Alabama. June 17, 1924. Rehearing Denied July 22, 1924.)

**1. Criminal law ⬅═564(5)—Venue of crime sufficiently proven.**

In a prosecution for murder, where circumstances in evidence were within distance of Jasper, which the court judicially knows to be the county seat of Walker county, venue was sufficiently proven; the court being charged with knowledge of the county lines and distances.

**2. Homicide ⬅═268—Identity of deceased and question of defendant's guilt held questions for jury.**

In prosecution for murder, evidence *held* sufficient to warrant submission of questions of identity of deceased and question of defendant's guilt to the jury.

**3. Homicide ⬅═170—Competent for state to prove that no one else about camp wore coat similar to that of deceased.**

In prosecution for murder, where deceased was partially identified by coat worn by him at time he was taken from defendant's camp, it was competent for state to prove no one else about the camp wore such a coat at that time; its probative force being for the jury.

**4. Criminal law ⬅═683(1)—Competent for state to show in rebuttal that statement by witness to solicitor was voluntary, and not error to permit witness to say that statement was true.**

In prosecution for murder, in which defendant's counsel elicited from a state's witness, who participated in the crime, the fact that he had made a statement to solicitor when he was under arrest, it was competent for the state to show in rebuttal that the statement was made voluntarily and without promise of reward; and permitting the witness to say that the statement then being made was true was not error.

**5. Criminal law ⬅═338(4, 5)—Question as to sale of coal and disposition of money by witness irrelevant.**

In a prosecution for murder, where a witness testified that he did not know that two of state's witnesses had trouble with defendant, a question whether they sold a car of coal and kept the money, causing ill feeling between them and defendant, was irrelevant as res inter alios acta.

**6. Witnesses ⬅═270(2), 363(1)—Questions on cross-examination held irrelevant and immaterial, and not to tend to show bias.**

In a prosecution for murder, questions on cross-examination whether state's witness had made statements that there was something by which he could make more money than digging coal, and whether he then knew anything about a reward for the arrest of slayer of deceased, and whether defendant failed to pay him for work, were irrelevant and immaterial, and did not tend to show bias.

**7. Witnesses ⬅═370(1)—Question as to statement by witness held not to show bias or ill feeling on part of witness.**

In a prosecution for murder, where a witness testified that he, with defendant and others, made a certain trip, questions whether one of his companions, to whom defendant owed money, stated that he was going to have his money, if he had to kill a man, and if the witness did not reply that "they saw us with him," would in no way have tended to show bias or ill feeling.

**8. Criminal law ⬅═419, 420(1)—Questions as to information received by witness held to call for hearsay testimony.**

In a prosecution for murder, questions to a witness, as to information gained while serving on a coroner's jury, called for hearsay testimony.

**9. Criminal law ⬅═419, 420(1)—Hearsay testimony inadmissible.**

Hearsay testimony, not deriving its value from credit to be given witness himself, is inadmissible.

**10. Criminal law ⬅═368(3)—Homicide ⬅═174(1)—Questions held to call for facts, not res gestæ and throwing no light on offense.**

In a prosecution for murder, questions whether a coroner's jury, on which witness had served, imprisoned two people for the mur-

der, whether the witness had received a warning to leave territory in which he was investigating, and whether he left, called for facts, not a part of the res gestæ, and throwing no light on the offense charged.

**11. Criminal law ⬤⟹656(3)—Statement of judge to jury, not to consider questions to which objection was sustained, not error.**

In a prosecution for murder, statement of court to jury not to get the impression from sustaining of objections to questions that they were being misled, and not to consider insinuations from questions to which objections were sustained, was not error.

**12. Criminal law ⬤⟹655(1)—Duty of judge to correct erroneous ruling.**

When trial judge has made an erroneous ruling, it is his duty to correct it, and to state the correction to the jury in plain terms.

**13. Criminal law ⬤⟹427(3)—Testimony as to acts of accomplices shortly before offense, without establishing conspiracy, not error.**

Where state's evidence as a whole tended to prove a conspiracy, between defendant and two others, to commit murder prior to the time deceased was taken from defendant's camp, admission of testimony as to the acts and declarations of the others just before deceased was taken away was not prejudicial error, regardless of whether the fact of conspiracy had then been established.

**14. Criminal law ⬤⟹475, 695(5)—Evidence of time body was immersed competent, and general objections not sufficient to raise expertness of witness.**

In a prosecution for murder, evidence as to how long body of deceased had remained in water in which it was found was material, relevant, legal, and competent, and might have been testified to by an expert, and general objections to such testimony by a witness who had not qualified as an expert were not sufficient to raise the question of his qualifications.

**15. Homicide ⬤⟹169(1)—Whether accused had bought groceries with check given him for deceased held irrelevant.**

In a prosecution for murder, whether accused had bought groceries with check given him for deceased *held* irrelevant.

**16. Criminal law ⬤⟹419, 420(1)—Homicide ⬤⟹ 178(1)—Questions held to call for hearsay testimony, or not sufficiently definite.**

In a prosecution for murder, questions to a witness, concerning one resembling deceased seen by him after supposed time of murder, his statements, and conversation and letter between witness and others *held* either to call for hearsay testimony, or not sufficiently definite to confine the answer to a description of deceased, especially where description of the man and his statement that his name was the same as that of deceased was admitted.

**17. Criminal law ⬤⟹393(1)—Witnesses ⬤⟹ 393(3)—Testimony of accused before coroner's jury admissible to impeach him, and did not infringe his privilege.**

Accused's testimony before a coroner's jury, when he was not under arrest and testified voluntarily, and which contained no confession or admission of guilt, was admissible to impeach and contradict him, and did not force him to give evidence against himself.

**18. Criminal law ⬤⟹858(3)—Refusal to permit jury to take entire writing containing illegal matter held proper.**

Where the showing made for defendant's absent witness contained illegal statements, and the legal parts of the statement were read to the jury, refusal to permit the jury to take into the jury room the entire writing, containing illegal matter, was proper.

**19. Criminal law ⬤⟹858(3)—Chains found about feet of deceased properly taken by jury during deliberation.**

In a prosecution for murder, where the body of deceased was found with chains attached to his feet, such chains were legal evidence and were properly taken by the jury during their deliberation.

**20. Homicide ⬤⟹169(1)—Testimony concerning conversation with deceased held irrelevant and illegal.**

In a prosecution for murder, testimony of a keeper of a rooming house, that deceased, about three weeks before the body was found, had stated where he was raised, that the witness had lent him money which deceased promised to repay on his return, and that deceased did not stop with the witness on his return, *held* irrelevant and illegal.

**21. Criminal law ⬤⟹723(1)—Refusal to exclude statement of opinion by solicitor not error.**

In a prosecution for murder, refusal to exclude a statement of solicitor that, if the jury would convict accused, it would be a long time before another similar crime would be committed, was not error, it being merely statement of opinion.

**22. Criminal law ⬤⟹782(12)—Charge that unless evidence showed guilt to a certainty to acquit held to exact too high a degree of proof.**

In a prosecution for murder, state has the burden of convincing the jury of the guilt of accused beyond reasonable doubt, and an instruction that unless evidence showed guilt to a certainty to acquit exacted too high a degree of proof.

**23. Criminal law ⬤⟹776(5)—Instruction as to effect of good character of accused held defective.**

In a prosecution for murder, an instruction that, if the accused had proven that he was a man of character, this might raise a reasonable doubt was defective for omission of word "good" before "character."

**24. Criminal law ⬤⟹798(1)—Requested charge as to effect of reasonable doubt held argumentative.**

In a prosecution for murder, a requested charge that each juror was entitled to his own conception of reasonable doubt, and that each one must be convinced beyond a reasonable doubt, was argumentative in character.

**25. Criminal law** ⟨key⟩789(18)—**Charge, as to effect of proof of one fact inconsistent with guilt, held bad.**

In a prosecution for murder, guilt or innocence of the accused must rest on the entire evidence, and requested charges to acquit, if a single fact was proven not consistent with accused's guilt, raising a reasonable doubt as to his guilt, were bad.

**26. Criminal law** ⟨key⟩763, 764(14), 815(4)—**Charge that unless state had shown motive for killing reasonable doubt arose therefrom and to acquit held to pretermit consideration of evidence and invasive of province of jury.**

A requested charge that, unless the state had shown a motive for the killing, this fact was sufficient to raise a reasonable doubt as to the accused's guilt, and, if such doubt arose, to acquit was bad, as pretermitting a consideration of all the evidence and invading province of jury.

**27. Criminal law** ⟨key⟩763, 764(19)—**Charge that part of confession favorable to defendant should be given same weight as other part held invasive of province of jury.**

A requested charge that part of a confession favorable to defendant should be given the same weight as that unfavorable to him was argumentative and invasive of province of the jury.

**28. Criminal law** ⟨key⟩789(18)—**Charges that one fact proven, inconsistent with guilt, was sufficient to raise a reasonable doubt held bad.**

Requested charges that if one single fact proven to satisfaction of jury was not consistent with the accused's guilt, it alone was sufficient to raise a reasonable doubt, and that the jury should acquit, were bad.

**29. Criminal law** ⟨key⟩782(4)—**Charges as to weight given defendant's evidence, and to acquit if evidence was evenly balanced, held misleading.**

Requested charges that defendant's evidence need not be considered in the light of the fact that he was defendant, but to be weighed as other testimony in the case, and that, if the evidence was evenly balanced, the jury should acquit, were arguments and misleading.

**30. Criminal law** ⟨key⟩789(18)—**Charge to acquit on reasonable doubt as to any material allegation of indictment for murder held bad, in view of lesser degrees.**

In a prosecution for murder, the jury might conclude that some of the elements of murder were lacking and still convict of a lower degree of crime, and a requested charge that if there was reasonable doubt as to any material allegation of indictment to acquit was bad.

**31. Witnesses** ⟨key⟩397—**Testimony of witness not disregarded, because he swore falsely before coroner's jury.**

In a prosecution for murder, testimony of a witness may not be disregarded, because he swore falsely before coroner's jury; the test being whether the witness swore falsely and willfully to a material fact in the case then under trial.

**32. Criminal law** ⟨key⟩781(4)—**Charge as to consideration of confession held misleading.**

A requested charge that, if at the time accused made a confession he was under arrest all surrounding circumstances should be considered, and, if there was reasonable doubt as to whether statement was made voluntarily, without inducement, hope of reward, or from fear to disregard it, was argumentative and misleading.

Appeal from Circuit Court, Walker County; Ernest Lacy, Judge.

Coleman Snoddy was convicted of murder in the second degree, and appeals. Affirmed.

The statement made by the court to the jury and made the basis of assignment of error 14 is as follows:

"Now, gentlemen, I want to instruct you about one matter. Of course, the solicitors for the state, as the representatives of the state, have the right to ask questions, and if it is not legal, and objection is made to it, and I sustain it, why that's trying the case according to the law, and don't get any impression or inferences from that that there might be something to hide out. If the defendant's lawyers, or either of them, ask a witness any question that I don't think is legal and objection is made to it and I sustain it, I am doing my duty in sustaining it, and you should not, from the mere fact that a question is asked that might be an insinuation that something else was out, you should not consider that as evidence in the case. We want to try this case according to the evidence in the case and according to the law as applied to the evidence, and don't get off on any side issue or inference that might come up, because of the character of questions that may be asked."

The remark made by the solicitor in argument, and made the basis of assignment 42, is as follows:

"If you will convict this man, it will be a long time before another crime like this will be committed."

Witness Kilgore testified that he didn't know about "John Wilson, Walter Key, and Ed Geesling (two of whom were state's witnesses) having any trouble with Coleman (defendant) about a pay day before they were arrested, but they got mad about the pay. I don't know that they got mad; they wanted to come down here and sue them." Whereupon he was asked:

"And Coleman turned over the coal for them to sell?"

"I will ask you whether or not, if they didn't load a car of coal, sell it, and keep the money, and out of that arose some feeling, and if out of that transaction there didn't some feeling arise between John Wilson, Ed Geesling, and Coleman?"

To which objection by the state was sustained.

Witness Wilson, having testified that he was working with defendant at the time of the tragedy, was asked on cross-examination:

"Just before Christmas the pay day came up, John, didn't it, and you didn't get any pay?" and "Didn't you tell Tom Snow, after the day that he was to have a pay day, didn't you tell Tom Snow that there was something you could do to make more money out of it than digging coal?" and "At that time did you know anything about this reward?"

—referring to a reward for the arrest of the slayer of the deceased.

Ed Geesling testified that:

"Will La Fayette, Coleman Snoddy, Walter Key, and I came down one day to Jasper. * * * Prior to that time a pay day had come, and Coleman did not pay us off. I had not gotten my pay at the time we made this trip."

Thereupon he was asked by defendant's counsel if La Fayette did not make the statement quoted in the opinion, to which the court sustained objection.

The witness Huggins testified that he was foreman of a jury impaneled by the coroner, and had investigated the finding of the body of deceased, found on December 7, 1921. He was asked these questions, the sustaining of objection to which is made the basis of assignments 6 and 13, inclusive:

"Didn't you get some information up there that somebody, on Saturday night, about the 26th of November, and about two weeks before this man was found in the river, was being killed up there on Blackwater?"

"And didn't you have two fellows there put in jail and keep them in jail a week for killing this same fellow?"

"Didn't your information that you had at that time show that on Saturday night, in the night, that somebody was hollowing and begging down on Little Blackwater there for help, and you investigated that, and, after you had investigated it, you had a man and a woman put in jail here and held them for a week?"

"And when you came back, when you went over there, you had information that over there, about this place where it was said that somebody was killed, that there was a puddle of blood, and you looked for that, didn't you?"

"You also had information that something had been drug from that place toward the river, just about the mouth of Blackwater, didn't you?"

"When you came back to your car, you found a note in your car, didn't you, Mr. Huggins?"

"Now, I will ask you if you found a note in one of your cars, stating to that jury to get out of that territory, or in substance to that effect?"

"And you got out of that territory, didn't you?"

Carl Posey, a witness for the state, testified that Sammy Snoddy and Brown came to his house the night deceased was supposed to have left, and asked for a gun, which he refused them, and that a little later they came back with a gun. He was asked:

"Who was the man they were talking about they needed the gun for? * * * Tell the jury about that."

Defendant's objection being overruled, the witness answered:

"They said they wanted the gun for protection; that this man Joe Carter was unruly and raised some racket, and they wanted a gun for protection. * * * I offered to go with them and help them arrest him."

He was asked:

"What did Coleman remark, if you offered to go with them—I mean Sammy—what did Sammy say?"

Objection being overruled, the witness answered:

"I don't remember whether Sammy said it or Mr. Brown, or anyway they said they did not need me."

This was also asked:

"Did you see anybody else up there, about the 18th and during the week that Joe was working there, with a coat on like that, besides Joe, I mean?"

Objection being overruled, the witness answered:

"Not as I remember."

These rulings of the court upon the testimony of Posey are made the basis of assignments 15–20, inclusive.

It appears for the state that one Sherer gave to defendant a check payable to defendant, with which to pay the deceased, and that defendant had cashed the check at a store operated by Mrs. Kilgore, who testified to this fact. Defendant endeavored to show that he secured the amount of the check from his mother, and gave it to deceased, and that his mother gave him back the check, to be used by him in purchasing groceries for her. On cross-examination of the witness Mrs. Kilgore, defendant asked her: "Did he (defendant) get some groceries for his mother?" The sustaining of objection to this question is made the basis of assignment 28.

The defendant's witness McVay testified that he lived in Birmingham, and that he noticed in the papers where a body was found in the Warrior river, and after that that the Snoddy boys had been arrested and charged with murder, and that at that time he had known Mr. Jim Snoddy for about 15 years. Thereupon defendant asked the witness:

"I will ask you to state to the jury whether or not you saw a man in Birmingham that fit the description of the party you saw in the party [paper]?" and "I will ask you if some one came to your place of business, in the lat-

ter part of November, and stated to you that he had been working for the Snoddy boys?"

To these questions the state's objections were sustained. The witness testified that Mr. Robert Kilgore and Mr. Scofield, of Jasper, were in his place of business about January 1, 1922. He was here asked:

"At that time did they discuss with you the fact that the Snoddy boys had been arrested and was charged with this offense?"

Objection to this question was sustained. The witness testified that in the latter part of November a man came to his place of business, describing him and the manner of his dress. Whereupon he was asked:

"I will ask you if this party stated to you that he had been working for the Snoddy boys over in Walker county?"

Objection to this question was sustained. The witness further testified that the man who came to his store, to the best of his recollection, told him his name was Carter. He was then asked:

"Now, first, I will ask you, after Mr. Kilgore was in your store and Professor Scofield, you wrote a letter to Mr. Jim Snoddy?"

Objection to this question was sustained.

The action of the court in sustaining objections to the foregoing questions to witness McVay is made the basis of assignments 31 to 34, inclusive.

Defendant offered a showing for the witness Zachary, to the effect that he conducted a rooming house in Birmingham, that he knew deceased, who had stopped with him on occasion, and that he met him on the streets in that city about November 14, 1921. These portions of the showing were excluded by the court, and its action in this regard is made the basis of assignments 43, 44, and 45:

"He told me that he was raised near Montgomery."

"He asked me to loan him 50 cents, which I did, and said that when he came back through there he would hand it back to me. I had a $1 bill, and went in the fruit stand, got it changed, and came back and handed him fifty cents."

"He did not stop with me the last time I saw him, at the time I let him have the 50 cents, as I was not at that time operating a rooming house."

These requests for instructions were refused to defendant:

B. To find defendant guilty, the evidence must be strong and cogent; and, unless it is strong and cogent as to show guilt to a certainty, the jury must find him not guilty.

D. The court charges you, gentlemen of the jury, that if the defendant has proven to your satisfaction that he is a man of character, taking this in connection with the other evidence in the case may be sufficient to generate a reasonable doubt in your minds of defendant's guilt, which would entitle the defendant to an acquittal, but for said good character, you would not have a reasonable doubt.

E. Each and every one of you are entitled to his own conception as to what constitutes a reasonable doubt of this defendant's guilt, that before you can convict this defendant the evidence must be so strong that it convinces each juror of the defendant's guilt, beyond all reasonable doubt, and if, after a consideration all.

F. The court charges the jury that if there is one single fact proven to the satisfaction of the jury, which is not consistent with the defendant's guilt, and this raises a reasonable doubt in the minds of the jury of the defendant's guilt, then you should acquit the defendant.

I. I charge you, gentlemen, that if there is one single fact proven to the satisfaction of the jury which is inconsistent with the defendant's guilt, that is sufficient to create a reasonable doubt in your minds, then the jury should give the benefit of the doubt to the defendant and find him not guilty.

K. Unless the state has shown a motive on the part of defendant for taking the life of the party alleged to have been killed, this fact alone, if it be a fact, is sufficient to raise a reasonable doubt as to guilt of defendant, and, if you have such reasonable doubt, you cannot convict the defendant.

M. The court charges you, gentlemen, that if the state has proven confession made by defendant, you have a right to weigh that part, if there is a part of such confession, that is favorable to the defendant, given the same weight as that part, if there be a part, that is injurious to the defendant; you may consider the confession, gentlemen, as a whole, that is for, and that is against, with the same weight.

S. The court charges the jury that, if there is one single fact proven to the satisfaction of the jury which is not consistent with the defendant's guilt, this alone is sufficient to raise a reasonable doubt in the minds of the jury, and the jury should acquit him.

T. I charge you, gentlemen of the jury, that if there is one single fact proven to the satisfaction of the jury, which is inconsistent with defendant's guilt, this is sufficient to raise a reasonable doubt, and the jury should acquit the defendant.

V. The court charges the jury that there is no law in this state which makes it your duty to consider defendant's evidence in the light of the fact that he is defendant, but you have a right to weigh it as you have other testimony in the case.

W. I charge you that, if the evidence is evenly balanced, the jury should lean to the side of mercy, and decide in favor of the defendant.

X. The court charges the jury that, if you are reasonably doubtful as to the proof in this case of any material allegation in the indictment, then you must acquit the defendant.

AA. The court charges the jury that, if you believe from the evidence in this case that witness Robt. Brown swore before the coroner's jury willfully and corruptly false, you may discard his testimony in this case altogether.

BB. The court charges the jury that, if you believe from the evidence in this case that Robt. Brown swore corruptly false to a material fact before the coroner's jury, upon the

investigation of this case at the time, you may disregard his testimony altogether.

CC. The court charges you, gentlemen, that the humane provisions of the law that, where statements are made by the defendant, accused of a crime, which are in the nature of a confession, you may scrutinize and consider, if it be a fact that the defendant was under arrest at the time, and all the surrounding circumstances connected with his statement or confession, and, after taking all the evidence in the case in consideration, if you have a reasonable doubt as to whether the statements were made voluntarily, without inducement, hope of reward, or from fear to the defendant at the time, then, gentlemen of the jury, it would be your duty to disregard the statements or confessions as though they had not been made.

J. B. Powell and J. J. Curtis, both of Jasper, for appellant.

Where venue is not shown, the affirmative charge is proper. 1 Mayfield's Dig. 857. Lantern v. State, 1 Ala. App. 34, 55 South. 1032. If there was a conspiracy, it ended when the crime was committed, and a subsequent statement by a co-conspirator, out of the presence of the defendant, was not admissible. Ferguson v. State, 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17; Lowman v. State, 161 Ala. 47, 50 South. 43; Patterson v. State, 202 Ala. 65, 79 South. 459; Gore v. State, 58 Ala. 391; James v. State, 115 Ala. 83, 22 South. 565. On cross-examination of a witness, any fact may be elicited which tends to show bias, interest, or partiality. Tapscott v. State, 18 Ala. App. 67, 88 South. 376; King v. State, 16 Ala. App. 103, 75 South. 692; Quinn v. State, 15 Ala. App. 635, 74 South. 743; Stout v. State, 15 Ala. App. 206, 72 South. 762; Brooks v. State, 8 Ala. App. 277, 62 South. 569; Humber v. State, 19 Ala. App. 451, 99 South. 68. The acts or declarations of third persons, not shown to be in the presence of the defendant, before it is shown that there was any conspiracy formed, are not admissible against the defendant. Langford v. State, 130 Ala. 74, 30 South. 503; Morris v. State, 146 Ala. 66, 41 South. 274; Johnson v. State, 87 Ala. 39, 6 South. 400; Hunter v. State, 112 Ala. 77, 21 South. 65; McAnally v. State, 74 Ala. 9; Smith v. State, 133 Ala. 145, 31 South. 806, 91 Am. St. Rep. 17; Beech v. State, 203 Ala. 529, 84 South. 753; Thomas v. State, 133 Ala. 139, 32 South. 250; Winslow v. State, 76 Ala. 47; Amos v. State, 83 Ala. 4, 3 South. 749, 3 Am. St. Rep. 682. A nonexpert is not competent to testify how long a body has been dead. White v. State, 136 Ala. 58, 34 South. 177. Evidence given by defendant before the coroner should not have been permitted to be read to the jury in this case. Moore v. State, 154 Ala. 48, 45 South. 656; Braham v. State, 143 Ala. 28, 38 South. 919; Rose v. State, 4 Ala. App. 163, 58 South. 680; Wright v. State, 3 Ala. App. 24, 58 South.

68; McAlpin v. State, 117 Ala. 93, 23 South. 130; Bradford v. State, 104 Ala. 68, 16 South. 107, 53 Am. St. Rep. 24; Beckham v. State, 100 Ala. 15, 14 South. 763; Redd v. State, 69 Ala. 255. The argument of the solicitor was improper. Thomas v. State, 18 Ala. App. 268, 90 South. 878. Charges D, E, and F should have been given. Watts v. State, 177 Ala. 24, 59 South. 270; Taylor v. State, 149 Ala. 32, 42 South. 996; Doty v. State, 9 Ala. App. 21, 64 South. 170.

Harwell G. Davis, Atty. Gen., and Malcolm Nettles, of Jasper, for the State.

Hearsay evidence is not admissible. 1 Greenleaf on Ev. § 99; 84 N. J. Law, 386, 86 Atl. 414, Ann. Cas. 1914B, 1109; Macon v. State, 179 Ala. 7, 60 South. 312; Kirklin v. State, 168 Ala. 83, 53 South. 253. Declarations of one co-conspirator are admissible upon the trial of another. Hunter v. State, 117 Ala. 77, 21 South. 65; Beach v. State, 203 Ala. 529, 84 South. 753. Evidence of defendant given before the coroner was admissible. Humber v. State, 19 Ala. App. 451, 99 South. 68. A general objection will not be sustained, unless the evidence is manifestly illegal. Braham v. State, 143 Ala. 28, 38 South. 919. There was no error in refusal of charges to defendant. (C) Abernathy v. State, 129 Ala. 85, 29 South. 844; (D) McClellan v. State, 140 Ala. 99, 37 South. 239; Eggleston v. State, 129 Ala. 80, 30 South. 582, 87 Am. St. Rep. 17; (I, S) Ex parte Davis, 184 Ala. 26, 63 South. 1010; (X) Mitchell v. State, 129 Ala. 31, 30 South. 348.

SAMFORD, J. About December 7, 1921, the body of a man was found in the Warrior river, just below a bridge which crosses the river, on the Jasper and Birmingham road. The man's throat had been cut, severing the jugular vein. He was described as having dark sandy short hair, blue eyes, dressed in a mackinaw coat, besides other clothing, and wearing ordinary work shoes, one of which had been slit at the toe with a knife. The body had attached to the feet an automobile mud chain. The body and clothing were muddy and gave evidence of having been in the river for some days. Decomposition had set in. The man found weighed about 170 pounds.

On the night of November 18, 1921, the defendant, together with his brother Sammy, and one Brown, took a man, named Joe Carter, from the mining camp of defendant, located about 21 miles from the bridge where the dead man was found. They marched him out of camp to the camp of a man named Sherer, where they got a Ford car, and from thence proceeded to the bridge where the body was found. Then, according to the testimony of Brown, Carter was taken out of the car and thrown into the river. The defendant, of course, denies this, and says he

put Carter out, paid him the amount due him for labor, and told him to go. There are many facts tending to identify the body found as being Joe Carter, and many tending to prove that it was not. There was also much testimony as to motive, and the movements of defendant and his party on the night of November 18th, not necessary here to set out, except as may hereafter appear in passing upon the questions presented.

[1] All of the circumstances detailed in the evidence were within a distance from Jasper, which we judicially know is the county site of Walker county, and, being charged with a knowledge of the county lines and distances, we must hold that the venue of the crime was sufficiently proven. 13 Mitch. Dig. 656, par. 179 (3½).

[2] We must also hold that, under the facts as presented, the evidence was sufficient to warrant the submission of the question of identity of the dead man and the guilt vel non of the defendant to the jury. That being the case, the general charge as requested by defendant was properly refused.

[3] The dead man was being identified partially by the coat worn by him, which was the same kind of a coat as that worn by Carter at the time he was taken from defendant's camp. It was therefore competent for the state to prove that no one else about the camp wore such a coat at that time. Its probative force was for the jury.

[4] The witness Brown, introduced by the state, under one phase of the testimony, was a participant in the crime of which the defendant was charged. Mr. Pennington, alluded to, was at that time the state's solicitor. The witness Brown. was at that time under arrest, and in jail on the same charge as is this defendant, and defendant's counsel had elicited from Brown the fact that he had made a statement to the solicitor at the jail in an effort to discredit Brown's testimony. In rebuttal, it was certainly competent for the state to show that the statement was made voluntarily and without any promise of reward, and it was not error for the court to permit the witness to say that the statement then being made was true.

[5] The question asked the witness Kilgore by defendant's counsel, as to the sale of a carload of coal and the disposition of the money, was res inter alios acta, and therefore was irrelevant.

[6] The questions asked state's witness Wilson on cross-examination, to which exceptions were reserved, called for evidence entirely irrelevant and immaterial to any issue in this case. Nor could the answer to the questions asked tend to show a bias on the part of the witness.

[7] At the time the question to the witness Geesling was asked, "On the way down there, didn't La Fayette say to you he was going to have his money if he had to kill a man, and didn't you reply to La Fayette that they saw us with him?" was asked before La Fayette had been examined as a witness, and the answer would in no way have tended to show bias or ill feeling on the part of the witness then testifying against defendant.

[8, 9] The questions made the basis of assignments of error 6, 8, 9, and 10, call for testimony that was hearsay and does not derive its value from the credit to be given the witness himself. Such testimony is inadmissible. 1 Greenleaf, § 99.

[10] Questions made the basis of assignments 7, 11, 12, and 13 called for facts, not a part of the res gestæ, and not tending in any manner to throw light on the crime charged. The court did not err in sustaining objections to these questions.

[11, 12] The statement of the trial judge made the basis of assignment 14 was without error. When a trial judge has made an erroneous ruling during the progress of a trial, he not only may, but it is his duty to, correct it, and to state the correction to the jury in plain terms, that the jury may be properly guided. The statement objected to is a correct statement of the law.

[13] The rulings of the court on the admission of testimony as to the acts and declarations of Sammy Snoddy and Brown, on the night of November 18th, just before Carter was taken out of the Snoddy camp, were without prejudicial error. Whether the fact of a conspiracy between defendant and these parties had been established by the evidence, at the time the questions were asked the witness Posey, is of no moment. The state's evidence, as a whole, did tend to prove a conspiracy between these parties, dating from a time prior to Carter's being taken from the Snoddy camp, and the fact, if it be a fact, that they did kill the deceased, Carter, in furtherance of a common purpose. The jury may infer that the common purpose was the murder of the man against whom they were moving, in concert. Hunter v. State, 112 Ala. 77, 21 South. 65.

[14] Assignments 25 and 26. It may be stated that the witness Legg had not qualified as an expert in such sort as that he might give an opinion of how long the body of the dead man had been in the water when found. Daisy Anderson v. State (Ala. App.) 99 South. 778.[1] But the evidence as to how long the body had remained in the water was material, relevant, legal, and competent, and might have been testified to by an expert. There was no ground assigned that the witness had not qualified as an expert. The general objections were not sufficient to raise this question.

[15] Assignment 28. Whether defendant bought groceries for his mother, with a check which had been given him for Carter, is irrelevant.

---

[1] 19 Ala. App. 606.

[16] Assignments 31, 32, 33, 34, and 35. The questions made the basis of these assignments called for testimony that was hearsay, or the questions were not framed with sufficient definiteness to confine the answer to a description of Carter. Besides, the witness was later permitted to describe the man who came to the store in Birmingham at a date subsequent to the 18th of November, and, further, to state that he said his name was Carter. This was all defendant was entitled to prove by this witness.

[17] Assignments 36, 37, 38, and 39. These assignments are based upon the action of the court in permitting the state, over the objection of defendant, to lay predicate for the impeachment of the defendant, testifying as a witness, by reading from the transcript of the testimony of defendant, taken before the coroner's jury, and in allowing the state to introduce such transcript to contradict the testimony then being given. The objection to this testimony is based upon the theory that the transcript of the testimony before the coroner's jury contained a confession of defendant. This is not the case. There were, perhaps, declarations against interest, but in no sense was the defendant's testimony a confession or an admission of guilt. The transcript of the testimony of defendant before the coroner was admitted in accordance with the rule recognized by us in Humber v. State, 99 South. 68.[2] There was no question as to the identity or correctness of the transcript. There was no invasion of defendant's constitutional rights, in that he was forced to give evidence against himself. He was not under arrest before the coroner and, so far as the evidence discloses, testified voluntarily. Such testimony not being a confession or admission of guilt, and being introduced for the purpose of contradicting the testimony then being given, was legal and admissible. Daisy Anderson v. State, supra; Macon v. State, 179 Ala. 6, 60 South. 312. It may be added that the defendant testified before the coroner's jury before he was arrested or charged with this homicide.

[18] Assignments 40 and 41. The showing made for defendant's absent witness, Hunter, contained statements which the court had held to be illegal. The legal parts of the statement were read to the jury, and the court properly refused to permit the jury to take with them into the jury room the entire writing containing illegal matter.

[19] The chains were legal evidence and were properly taken by the jury during their deliberation.

[20] Assignments 43, 44, and 45. These statements of the witness are clearly illegal and irrelevant.

[21] Assignment 42. This statement of the solicitor is not of a fact, but merely states his opinion. The court did not err in refusing to exclude it. The opinion in the case of Moulton v. State, 199 Ala. 411, 74 South. 454, is based upon the theory that the use of the word "negro" was calculated to arouse race prejudice.

[22] Charge B, requested by defendant, exacts too high a degree of proof. The only burden resting on the state in this regard is that the evidence should be so strong as to convince the jury of the guilt of defendant, beyond a reasonable doubt.

Charge C had already been given.

[23] Charge D omits the word "good" from character. This in itself would be sufficient to condemn the charge. The general rule attempted to be stated in this charge had already several times been given.

[24] Charge E seems to be incomplete, and, if not, is an argument pure and simple.

[25] Charge F is bad. The guilt or innocence of the defendant cannot be predicated upon a single fact in evidence, but must rest on the entire evidence. McKenzie v. State 19 Ala. App. 319, 97 South. 155.

Charge H is not predicated upon a consideration of the evidence. Moreover, the charge is covered by given charge 51.

[26] Charge I has many times been held bad. Ex parte Davis, 184 Ala. 26, 63 South. 1010.

Charge J is covered by given charge 5 and other charges given.

[27] Charge K pretermits a consideration of all the evidence, and for that reason is bad. Moreover, the correct rule on this question had already been given in written charges 31 and 38. Charge K, as written, is invasive of the province of the jury.

Charges L and N are covered by given charges 5, 12, 28, and 37.

[28] Charge M, in the first place, is invasive of the province of the jury, and, in the next place, is argumentative.

Charge O is covered by given charge 24, and charges P, Q, and R are the general charges which have already been passed upon.

[29] Charges S and T are bad. Ex parte Davis, supra.

Charge U is covered by charge 8.

[30] Charges V and W are arguments, and are misleading.

[31] Charge X is bad. The jury might conclude that there were some of the elements of murder lacking, and still convict the defendant of a lower degree of crime. The charge is misleading.

[32] Charges AA and BB do not state the correct rule. The rule applies to testimony then being given. Did the witness swear falsely and willfully to a material fact in the case then on trial?

[33] Charge CC is argumentative and misleading. The correct rule regarding this proposition was given by the court in written charge 41.

The defendant has had a fair and an im-

---

[2] 19 Ala. App. 451.

partial trial. We have carefully examined the whole record, and find no prejudicial error affecting the defendant's rights, and the judgment is affirmed.

Affirmed.

