70 So.2d 804

### SANDERS v. STATE.

5 Div. 420.

Court of Appeals of Alabama.

March 3, 1954.

488

D. T. Ware, Roanoke, for appellant.

Si Garrett, Atty. Gen., Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for murder in the first degree.

At the trial below pleas of not guilty, and not guilty by reason of insanity were interposed.

The jury returned a verdict of guilty of murder in the second degree and fixed his punishment at imprisonment in the penitentiary for a term of twenty years.

Appellant's motion for a new trial being overruled an appeal was perfected to this court.

The evidence presented by the State tended to show that early on the morning of 24 May 1947, on a rural road in Randolph County, the body of Robert Irwin Hand, a cab driver, was found slumped in the front seat of his cab. Hand had been shot several times, and his head had been injured.

J. T. Brown and his son, who lived about a quarter of a mile from where the cab was found had, the night before at or about 9:00 P. M., heard a series of shots apparently in the vicinity of where the cab was found, but had not investigated, and it was not until the next morning that Mr. Brown walked to the area and discovered the cab and Hand's body.

An intensive investigation into this shooting was made by law enforcement officers at the time but no arrests resulted.

Later in the morning after the body had been discovered, and after a crowd had gathered at the scene, the law enforcement officers observed a set of human tracks leading from the cab across a nearby field. These tracks appeared to be made by a running person. The State toxicologist made a plaster cast of the print. The undisputed evidence shows this track to be 11½ inches in length, and made probably by a shoe sized 8½.

In October 1952 one John Tom Lester was a prisoner in the Randolph County jail. Lester made certain statements to the sheriff of Randolph County tending to incriminate this appellant in the Hand killing.

Thereafter the appellant was taken into custody and questioned by the Solicitor and various law enforcement officers.

From this point on the record is replete with confessory statements made to various people, or groups of people, on numerous different occasions. Innumerable witnesses testified in this regard. Several were examined on voir dire by appellant's counsel prior to the admission of the confessory statements.

In addition to numerous law enforcement officers, the State also presented two doctors who had visited the appellant while in jail, and to whom the appellant had made confessory statements, and also the wife of a deputy sheriff who lived in the jail with her husband. The statements to the deputy's wife were made by the appellant while assisting her in chores in the jail, no other parties being present at the time.

We have examined the rulings relative to the admissions of these various confessions in evidence, and we think it suffices to say that in no instance can error be attached to any of such rulings.

These statements, or most of them, were to the effect that the appellant and a companion had killed Hand at the place in question; that the companion had fired one shot and given the pistol to the appellant and told him to finish the job, and he, appellant, had fired two shots into Hand and had struck him over the head with the pistol. Both had then fled the scene separately.

The evidence shows that the companion was later killed in Korea.

For the defense the appellant's father testified that on the day the appellant was arrested he went to the sheriff's office and was told by the then sheriff, Mr. Payne, that his son was merely being held for his own protection; that he was about to solve the Hand case, and did not want appellant to be out where he could be harmed, and for Mr. Sanders not to say anything to anyone about his son being in jail.

Mr. Sanders further testified the next he heard of the matter was some three weeks later when he learned his son had been charged with murder.

In rebuttal to this Mr. Payne testified that on this occasion he told Mr. Sanders that the appellant was being held for investigation.

The appellant appeared as a witness in his own behalf. He denied that he had had anything to do with the killing of Hand.

The appellant further testified that when he was first taken into custody he was told he would be held two or three days for safekeeping; that the officers later told him, after confronting him with the other prisoner, Lester, that it would be best for him to tell all he knew, that he would get out light and he then started talking and really did not know what he told the officers.

The appellant further testified that he did not see his father for three weeks after he was placed in jail, and was not permitted to contact his father.

In rebuttal to this latter phase of appellant's testimony the State presented Mr. Payne, the sheriff, and the jailer, who testified that no requests were made by appellant to contact anyone, and no one was prevented from seeing appellant while he was in jail.

The defense called as a witness Mr. T. G. Kirby, the present sheriff, who testified that he had followed the tracks leaving the automobile on the day the killing was discovered.

The defense then sought to show by Mr. Kirby that he returned two or three days later and again followed the tracks further. The court sustained the State's objection to this testimony on the ground that it was too remote in time. This is one of the errors urged in brief of counsel.

We pretermit consideration of the court's ruling in this instance, as the record shows that shortly thereafter Mr. Kirby was permitted to testify in detail as to his efforts at following the tracks, even as to efforts he made almost a week later upon being informed of tracks around a mud hole some distance away at Wash Stinson's place.

Mr. Kirby measured these tracks and they were the same size as those leaving the car.

Not being able to follow any tracks further Mr. Kirby went to the home of Amos Adams about a half mile away.

It should be noted that the evidence shows that the appellant, even as a boy, had very large feet, and from the time he was about 15 years of age wore a size 12 shoe.

Amos Adams and his wife each testified that on the morning that Hand's body was found a Negro man, unknown to them, came to their home. His clothes were muddy. He washed and ironed his clothes at the Adams' home, and then departed. Neither had seen him since this occurrence.

The defense introduced several lay witnesses whose testimony was to the effect that the appellant had since earliest boyhood been large for his size; that he was backward in school, and could not learn his tasks when employed in a cotton mill; some of these witnesses testified that in their opinion the appellant was of unsound mind.

■ The State's evidence clearly established the corpus delicti of the offense charged. The appellant's confessions, if properly admitted, tend directly to show him to be the perpetrator of the crime charged.

■ In every instance in which an objection was interposed to the admission of a confessory statement counsel for appellant was first permitted to examine the witness on voir dire. It was apparently the theory of appellant's counsel that at least some of the confessions were involuntary because the father of appellant had been told that the appellant was being held merely in protective custody. This matter was contradicted by evidence presented by the State.

We find no abuse in the rulings by the court admitting the confessions. This State's rules as to the admissibility of confessions into evidence have been stated many times. We will not restate them. A review of many of the rules, as they pertain to this case, may be found in Fitzhugh v. State, 35 Ala.App. 18, 43 So.2d 831.

To establish his plea of insanity the appellant presented several lay witnesses. The trend of their testimony has heretofore been set forth. The evidence also shows that this appellant has twice been admitted to the State hospital for the insane, the first time being in 1948. On this first admission, which was after Hand had been killed, the appellant remained in the hospital some three months. The second admission was from Montgomery County in 1952.

Some of the witnesses for the State testified that the appellant had stated that the reason for his first admission was his worry over his participation in the Hand killing.

■ The appellant testified in this cause at some length. His testimony constituted a denial of any participation in the killing of Hand, and an attempt at explaining why he made the numerous confessions. All in all it afforded the jury an ample opportunity to form an estimate of his mental condition as of the time of the trial, and further as to whether he suffered from mental defectiveness to an extent that he should not be held responsible for his crime.

■ Counsel for appellant strenuously argues that certain portions of the argument of the Solicitor to the jury, duly excepted to, were so prejudicial to the appellant as to necessitate a reversal of this case. These remarks are set forth in the question certified to the Supreme Court by this court, as appears below.

The judges of this court being unable to reach an unanimous conclusion upon consideration of the results to be reached in light of such remarks certified the question to the Supreme Court, the pertinent portions of such certified question being as follows:

"The record shows the following during the argument of the Solicitor to the jury:

" 'During Mr. Hooten's argument to the jury, the following occurred:

" 'Mr. Ware: We object to that argument of the solicitor, that this is the

most serious or important case that has happened in Randolph County in thirty years, and that it will go down as being very important to the citizens of this county.

" 'The Court: Overruled, that is just argument to the jury.

" 'Mr. Ware: We reserve it.
\* \* \* \* \* \*

" 'Mr. Ware: And the defendant excepts to the argument that if this case is thrown out the window, the law enforcement officers of this county will be thrown out, too.

" 'The Court: The court thinks that is just argument. Overruled.

" 'Mr. Ware: We reserve it.
\* \* \* \* \* \* .

" 'Mr. Ware: Object to the argument of the solicitor that if the door is closed on him, they might not open the second door, if this man is acquitted, they might not get somebody else.

" 'The Court: Overruled.

" 'Mr. Ware: We reserve it.
\* \* \* \* \* \*

" 'Mr. Ware: We again except to the argument of the solicitor in which, "I am praying with you that you won't close the door in this case," indicating that they might not be able to convict somebody else if he were acquitted.

" 'The Court: Overruled.

" 'Mr. Ware: We reserve it.'

"The judges of this court are unable to reach an unanimous conclusion or decision as to whether such arguments, or either of such arguments, are within the influence of the doctrine enunciated in Johnson v. State, 246 Ala. 630, 22 So.2d 105, and cases cited therein.

"Therefore, as authorized by Section 88, Title 13, Code of Alabama 1940, the following question is hereby certified to the Supreme Court of Alabama for an opinion to guide this court

in the further review of the above mentioned case pending in this court.

"Are the above arguments, or either of them beyond the limits of proper argument?"

The Supreme Court has made, and forwarded to this court the following response to said question:

"Response to Questions Certified by the Court of Appeals

"SIMPSON, Justice.

"Answering your inquiry of January 5, 1954, propounded to this court under authority of Section 88, Title 13, Code 1940, our view is that the quoted argument of the solicitor who prosecuted for the State did not go beyond the limits of legitimate forensic discussion. While the bare quotations may not give us a true picture of the exact status of the argument, it would seem to us that the statements of the solicitor were merely arguendo of his opinion of the case and what the result of the jury's verdict should be. This case should be ruled by such cases as Davidson v. State, 211 Ala. 471(5), 100 So. 641; Bridges v. State, 26 Ala.App. 1, 152 So. 51, certiorari denied, 228 Ala. 72, 152 So. 54; Snoddy v. State, 20 Ala.App. 168(21), 101 So. 303.

"The foregoing are to be distinguished from Johnson v. State, 246 Ala. 630, 22 So.2d 105, and cases there cited, in that the statements by the solicitor in these latter cases were made as a fact.

"All the Justices concur."

In view of the above response we of course hold that no reversible error resulted from rulings of the court in the above instances.

■ Refused charge 1 requested by appellant, being affirmative in nature, was properly refused under the developed evidence of this case.

All of the remaining charges requested by appellant which were refused, were refused without error, inasmuch as all of such charges were covered in the very excellent oral instruction of the court, or by other charges which were given.

Affirmed.