# McMahan *v.* The State.

## *Murder.*

(Decided June 16, 1910.   Rehearing denied June 30, 1910.
53 South. 89.)

1. *Homicide; Murder; Statutory Provisions.*—The Alabama statutes relative to homicide have not added to or taken away any ingredient of murder at common law, and every common law murder is
murder under the statute.

2. *Same.*—If a suicide's act be felo de se one contributing to the
criminal result is guilty of murder whether present or absent, under section 6219, Code 1907.

3. *Same; Question for Jury.*—Under the evidence in this case, it
was a question for the jury whether deceased intentionally took his
own life, and if so, whether defendant contributed to the act.

4. *Same; Instructions; Harmless Error.*—A charge asserting that
if the death of the deceased was self inflicted and was the result of
a compact between him and the defendant that each take his own
life, defendant as survivor was guilty of murder was a correct
charge on one aspect of the case and a subsequent instruction making the defendant's guilt depend alone on whether he fired the fatal
shot, was not prejudicial to the defendant in view of his defense of
not guilty.

5. *Suicide; Felo de se.*—When a man of age, of discretion and
compos mentis kills himself in any way, suicide or felo de se results; but if he loses his memory by sickness infirmity or accident
and kills himself, he is no felo de se nor can he be said to commit
murder on himself or another.

6. *Accessories; Before the Fact.*—Under section 6219, Code 1907,
any word or act contributing to the commission of a felony, intended to incite or encourage its accomplishment, whether the one so
contributing is present or not, brings the accused under such circumstances within the purview of the statute.

·Appeal from Gadsden City Court.

Heard before Hon. Alto V. Lee.

Kebe McMahan was convicted of murder in the first
degree and he appeals. One defense was that the deceased killed himself under a compact with the defendant, and the other defense was that the defendant had
nothing to do with it. Affirmed.

[McMahan v. The State.]

CULLI & MARTIN, and ALTO V. LEE, JR., for appellant. The evidence of John Bates should have been excluded. *Governor v. Campbell,* 17 Ala. 566; *Carr v. The State,* 106 Ala. 1; *Curtis v. The State,* 118 Ala. 132; *Whittaker v. The State,* 106 Ala. 30; *McCormack v. The State,* 102 Ala. 160; *Harbour v. The State,* 140 Ala. 106. The court erred in admitting the evidence of Dr. Cox objected to.—*B. R. & E. Co. v. Butler,* 135 Ala. 389. Charge C. given for the state is faulty.—*Holmes v. The State,* 136 Ala. 80. Charge G. given for the state is an argument, states the law incorrectly and should have been refused.—*Caddell v. The State,* 136 Ala. 13; *Avery v. The State,* 124 Ala. 20. The court's oral charge and charges A. and B. given for the state were not correct statements of law—*Sanders v. The State,* 54 Tex. Crim. Rep. 101; *Grace v. The State,* 44 Tex. Crim. Rep. 193; *May v. Fennell,* 101 Me. 516. The court was in error in charging that a homicide is not reduced from murder to manslaughter unless the defendant was so drunk as not to know what he was doing or to know right from wrong.—*Whitton v. The State,* 115 Ala. 72; *Chatham v. The State,* 92 Ala. 47; *King v. The State,* 90 Ala. 612. The court's oral charge was the charge upon the effect of the evidence.—*Collins v. The State,* 138 Ala. 57. It was not insisted that the defendant could not be convicted on the suicide theory because not so charged in the indictment, but no authority is cited in support thereof.

ALEXANDER M. GARBER, Attorney General, for the State.

McCLELLAN, J.—The deceased, Ashley, died as the result of a pistol shot penetrating his head at a point near his right ear. The prosecution contended chiefly

for the theory that defendant purposely shot him in order to possess deceased's wife, with whom there was evidence tending to show defendant was enamored, and to whom he had paid, as to a married woman, improper attention, if, indeed, he had not had improper relations with her. The defendant asserted his innocence, and testified that deceased accidentally or intentionally took his own life. Leading to the conclusion that deceased committed suicide, the defendant testified that, some hours before the tragedy, while both he and deceased were intoxicated, defendant stated to deceased that he (defendant) thought he would kill himself; that deceased then had defendant's pistol in his hand; that defendant told him (deceased) to give him (defendant) the pistol, stating he would shoot himself; that deceased remonstrated with defendant, suggesting that, to avoid suspicion of his complicity in defendant's death, defendant write a note to his (defendant's) people; that they had no pencil; that deceased proposed that they go on to a dance in the neighborhood wherein they then were, and in the same connection said, "We will both kill ourselves"; that, after leaving the dance, they went to a dwelling in which there was then no one, and while there defendant heard the pistol snap in or about the kitchen part of the house; that deceased said he was trying to shoot a dog, but that the weapon was broken; that later the horse they were driving was not traveling fast enough, so he reached for the whip, which he then found had been lost; that he (defendant) proposed the firing of the pistol to excite the horse, requesting deceased to give him the pistol; that deceased said it was broken; that he (defendant) said, "* * * How are we going to shoot ourselves if it (pistol) is broke?" and deceased said, " 'I will take it and snap it,' or 'try it,' I do not know which, and he (deceased) said, 'You take

it and kill yourself;' and about that time the pistol fired, and he raised up and grabbed me by the arm, and the horse was running, and he fell out, and the horse run on, and I fell out."

Upon this evidence, adduced by the defendant tending to show that the death of deceased was self-inflicted, the court, in its oral charge, and by special instruction requested by the state, informed the jury that if the death was the result of preconcert or prearrangement, compact, or mutual agreement between the men that each take his own life, then the defendant, as the survivor, would be guilty of murder in either the first or second degree. Latterly, by means of emphatic special instructions, requested by the defendant, the guilt vel non of the defendant was made to depend alone upon whether defendant fired the fatal shot. It thus appears that inconsistencies infected the declaration of the law of the case to the jury. Our statute has divided murder into two degrees, but has not added to nor taken away any ingredients of murder at common law. Every murder at common law is murder under our statutes.—*Arp v. State,* 97 Ala. 5, 12, 12 South. 301, 19 L. R. A. 357, 38 Am. St. Rep. 137; *Ex parte Nettles,* 58 Ala. 268. The statute (Cr. Code, § 6219) abolishes, in felony cases, the distinction between an accessory before the fact and a principal, and between principals in the first and second degree, and relegates to the class of the principal, as in misdemeanors, all persons concerned in the commission of a felony, whether they directly commit the act, or aid or abet in its commission, though not present. Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether the one so contributing is present or not, brings the accused, under such circumstances, within the influence of the cited statute.—*Fer-*

*guson v. State,* 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17, and authorities therein cited.

At common law self-murder was a felony; but since with us no forfeiture of estate penalizes the felon, and since the dead cannot be punished, no penalty can be inflicted upon the self-destroyer. But collateral consequences may and do, upon occasion, depend upon the feloniousness of self-murder. It is said in 2 Bish. New Cr. Law, § 1187: "If, under the common law as it was administered in England when this country was settled, one advises another to kill himself, and he does it in the presence of the adviser, the latter becomes guilty of murder, probably as principal of the second degree, but at all envents as principal. And it is the same in our states." See, also, sections 510, 511, of the same treatise. That intentional self-destruction by one without avoiding mental distemper is felo de se, is a generally recognized criminal doctrine. The citations to the mentioned sections of Bishop's treatise so demonstrate. In Dr. McClain's treatise on Criminal Law, at section 290, these observations are made: "* * * If two mutually attempt to commit suicide, and one survives, he is guilty of murder of the one who dies, by reason of the doctrine of unlawful combination." And he says: "One who advises and counsels another to commit suicide is an accessory before the fact to murder. Both from reasoning which makes an accessory before the fact to the suicide guilty of murder, * * * it is evident that the wrong involved in the act is felonious in its nature." The doctrine of the quoted and cited texts is illustrated in all strength by the Massachusetts court in *Commonwealth v. Bowen,* 13 Mass. 356, 7 Am. Dec. 154, and *Commonwealth v. Mink,* 123 Mass. 422, 25 Am. Rep. 109. See, also, 21 Am. & Eng. Ency. Law, pp. 98, 99, collating a number of English cases; *Blackburn v. State,*

23 Ohio St. 146, 163; 1 Hale's Pleas of the Crown, pp. 412, 413.

The distinction, taken at common law, in respect of the criminal relation one counseling self-murder by another bore to the act effecting his death, was that if present the counselor was a principal, but if not present he was an accessory before the fact, and the consequence under that jurisprudence was that the accessory was unpunishable, since the principal could not be convicted.—*Commonwealth v. Mink, supra;* 2 Bish. § 1187. In the latter event the obvious effect of our statute (section 6219) was to remove the impediment whereby, at common law, the accessory before the fact was not punishable.—2 Bish. § 1187, subhead 5. In 1 Hale's Pleas of the Crown, p. 411, it is said: "Felo de se, or suicide, is where a man of the age of discretion (14 years at common law) and compos mentis voluntarily kills himself by stabbing, poison, or any other way. * * * If he lose his memory by sickness, infirmity, or accident, and kills himself, he is not felo de se; neither can he be said to commit murder upon himself or any other." In a subsequent statement, on page 412, Lord Hale thus more concretely states the degree of mental distemper requisite to avoid the feloniousness of the act of self-destruction: "* * * It must be such an alienation of mind that renders them to be madmen or frantic, or destitute of the use of reason. A lunatic killing himself in the fit of lunacy is not felo de se; otherwise it is, if it be at another time."

In certain consequence, treating the matter at common law only, it must have followed that, where the act of self-destruction was inflicted without the presence of him who would have been an accessory before the fact, had the self-destroyer been compos mentis, the instigator could not have been condemned, because there

.cannot, of course, be an accessory before the fact to an act not criminal, and to which there was no principal. Has our statute (section 6219) effected to alter this result? We think not. The premise of the statute is that the act be a felony. If no felony be committed, because of want of mental capacity in the self-destroyer to constitute the act a crime, there could be no principal, and hence no accessory before the fact. But, as previously remarked, if the self-destroyer's act be felo de se, then, whether present or absent, the contributor to the criminal result (*Ferguson's Case, supra*) is guilty.

Under the facts and circumstances, on the phases of the case to which we have just attended, it was for the jury to say, the defendant being present, whether deceased intentionally took his own life, and, if so, whether defendant contributed, as before defined, to that act. The fact that latterly the court instructed the jury to the exclusion of guilt on the theory last stated did not, of course, prejudice the defendant. The guilt vel non of the defendant, upon the theory that his hand fired the fatal shot, was also a question for the jury, and hence the affirmative charge, on that view, was well refused.

There are more than two score errors assigned as upon the admission and rejection of evidence on the trial. Each one has been carefully considered, and so in connection with the argument thereon of appellant's counsel. We find no error in any of these assailed rulings. They each invoked the application of familiar rules of evidence, and the learned court correctly applied them.

The remaining assignments question the propriety and correctness of parts of the oral charge of the court, of several charges given at the instance of the prosecution, and of charges refused to defendant. None of

these complaints of error possess merit. The substantive law of the case was well stated to the jury, and so accords with the decisions of this court on the many subjects dealt with in the instructions indicated. None of the decisions noted in brief by counsel for appellant lead in application to prejudicial error in any of the instructions, oral or requested, given to the jury.

The defendant's trial was without, to him, prejudicial error. The judgment meted out to him below must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.