165 So. 788

### BRIMER v. STATE.
### 7 Div. 155.

Court of Appeals of Alabama.
Feb. 11, 1936.

Merrill, Jones & Whiteside, of Anniston, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The prosecution in this case originated in the county court upon an affidavit by one Vera Phillips, wife of the alleged injured party, wherein appellant was charged with the offense of an assault with a knife upon Tom Phillips. The trial in the county court resulted in his conviction, and his fine was assessed at $25. He appealed to the circuit court and was there tried by a jury upon a complaint filed by the solicitor, as the statute requires. The trial in the circuit court resulted in his being again convicted, and the jury returned the following verdict: "We the jury find the defendant, Bill Brimer, guilty as charged in the complaint." A verdict of this character is authorized under the provisions of section 5286 of the Code 1923. It will be noted that the jury by its verdict did not impose a fine, thus leaving the imposition of the punishment to the court. In accordance with the provisions of the statute, supra, the court sentenced defendant to serve a term of six months' hard labor for the county as a punishment for the offense; and to 120 days' hard labor at the rate of 75 cents per day to pay the costs which as stated in the judgment amounted to $89.75.

The evidence adduced upon the trial is brief, and but two questions are presented for our consideration. No exceptions were reserved to the court's oral charge. No special written charges were requested; nor was there a motion for a new trial.

The two points of decision referred to are the exceptions reserved to the court's rulings on the admission of evidence which occurred during the cross-examination of the defendant when testifying as a witness in his own behalf.

The defendant testified as follows:

"My name is Bill Brimer, I am the defendant in this case. I was at Tom Phillips the night that Crosson got killed. There was a racket there in the house at that time but I didn't see Tom get cut. The last I saw of him he and Dugan Smith were standing back up in the corner together. I didn't know Tom was cut at the time I went out of the house. I did not cut him. I did not have anything to do with the racket in there, I didn't even have my pocket knife with me. I was just there, and had nothing whatever to do with it.

"On cross-examination said witness testified as follows:

"We fellows were all over there the night Lovejoy got killed. The sheriff did

not find me and Tom up there and separated us to keep us from fighting.

"Thereupon the state's solicitor propounded the following questions to the witness:

"Didn't Mr. Adams have you in the collar and hold you off this way and hold Tom off this way when Lovejoy got killed?

"The defendant duly objected to said question on the grounds that it called for illegal, incompetent, immaterial and irrelevant testimony, and on the further ground that it called for testimony that was not a part of the res gestae, and for matters and testimony that occurred or happened after the fight was over. The court overruled the objection, and the defendant then and there duly excepted.

"The witness answered: 'No, sir.'

"Counsel for defendant moved the court to exclude the answer of the witness on the same grounds assigned in the objections to the question. The court overruled the motion, and the defendant then and there duly excepted.

"The witness continued: I was over there that night. I was not drunk. I was there when this fight started. I didn't knock him down and cut him. I heard what he said about it, and saw those marks on his arm. I did not do it."

In connection with the above ruling, appellant's counsel have the following to say in their brief:

"On the night of February 9, 1935 some few people whose names are recorded in the bill of exceptions in this cause gathered at the home of one Tom Phillips in Heflin, Alabama. Sometime early in the evening, said Tom Phillips was cut with a knife by some person present, named by Tom Phillips as being the defendant in this case. After the lapse of a considerable period of time, Mr. B. L. Adams, the chief of police of Heflin, went to Phillips' home and after his arrival and while he had hold of Phillips with one hand and someone else with the other hand Phillips shot and killed one Carson (Crosson) Lovejoy. Phillips later pleaded guilty to a charge of murder in the first degree predicated on the killing of Lovejoy, and was sentenced to life imprisonment in the penitentiary.

"The above statement of facts sheds quite a bit of light on the timely objection made by counsel for the defendant to the solicitor's question on cross-examination of the defendant, namely, 'Didn't Mr. Adams have you in the collar and hold you off this way and hold Tom (Phillips) off this way when Lovejoy got killed?' The question was objectionable for at least two reasons. First, as pointed out in the objection, it called for testimony that clearly was not a part of the res gestæ. The same people who were present at the time Tom Phillips was cut were not present when Lovejoy was killed. A considerable period of time had elapsed and there was no connection whatsoever between the two offenses. Therefore, it would appear that the court erred with reference to its ruling on the objection made by counsel for the defendant to this question. The other reason for which this question was objectionable is that the only purpose the solicitor could have had in asking the question, it calling for testimony not a part of the res gestæ in the offense with which the defendant here is charged, was to prejudice the defendant here by confusing the jury through the means of connecting the cutting of Phillips with the cold-blooded murder of Lovejoy. All of the witnesses in this case testified that Phillips was not cut to any appreciable extent, but the solicitor here, by attempting to connect the cutting with the felonious homicide, went outside the scope of legitimate testimony and requested inadmissible testimony for the purpose of prejudicing the defendant in the eyes of the jury. For this further reason, we believe the court erred in overruling objection of defendant's counsel to this question."

As to the foregoing, we are unable to agree with distinguished counsel for appellant. In the first place the defendant answered the question in the negative. He replied, "No sir." As a result of this answer, no one else having testified on this question, the evidence before the jury was to the effect that the matter inquired about did not occur. Moreover, we are unable to ascertain from the record (as stated above by appellant's counsel) that "a considerable period of time had elapsed and that there was no connection whatsoever between the two offenses." The record does not appear to bear out this statement, and from the manner in which this case was tried, it appears from the record that the transaction was a continuous one throughout. If this is correct, the question under discussion called for facts of the res gestæ, and, if so, it is elementary that the question was legitimate.

As to remaining point of decision, we again quote from brief of appellant's counsel, who in this connection say: "The other objection and exception noted in the bill of exceptions is perhaps even better taken than the one above mentioned. This was the objection to the solicitor's question, 'You are also serving a term in the penitentiary for murder—on a parole for murdering a man from this county?' We recognize the well settled rule that imprisonment in the penitentiary for a crime involving moral turpitude can be shown for the purpose of impeaching a defendant who testifies in his own behalf. However, the courts have repeatedly held that the reason aforementioned is the only reason and the only purpose for which such testimony is admissible. Had the solicitor been content with merely bringing out the fact of imprisonment, he would doubtless have been within the purview of the rules of this court. But he went further and interrogated the defendant as to whether or not he was then on parole for murdering a man from the county in which he was being tried."

By express provision of the statute (sections 7722, 7723, Code 1923) if a witness has been convicted of crime involving moral turpitude, he may be examined as to such conviction, and such evidence goes to the credibility of the witness. When the defendant, in a criminal prosecution, voluntarily takes the stand as a witness in his own behalf, he may be impeached in the same manner as other witnesses, such as by showing that he has been convicted of crime involving moral turpitude, etc. It therefore clearly appears that the court ruled correctly in permitting the solicitor on cross-examination of the defendant to ask him the question as to his having been formerly convicted of murder and served a term of imprisonment in the penitentiary therefor. And we are of the opinion that the further question "if he was on parole at the time of the trial," was properly allowed, under the rule above stated. We do not think this ruling of the court could operate to the prejudice of the defendant, and we do not concur in the insistence of appellant's counsel in this connection, as above quoted.

We find no prejudicial error in the rulings of the court complained of and above discussed, and as these points of decision are, as stated, the only question presented for consideration, and the record proper being regular and without error, the judgment of conviction from which this appeal was taken is affirmed.

Affirmed.