191 So.2d 523

**Herschel Lee FOSTER**

v.

**STATE.**

**5 Div. 658.**

Court of Appeals of Alabama.

Aug. 16, 1966.

Rehearing Denied Sept. 27, 1966.

Nabors & Torbert, Gadsden, for appellant.

Richmond M. Flowers, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

Foster submitted his appeal February 17, 1966, without oral argument.

The Macon County Grand Jury accused him and another of breaking and entering with larcenous intent Reynolds Drug Store in Notasulga. Tried on a severance, a petty jury found him guilty of second degree burglary as charged. Code 1940, T. 14, § 86.

After adjudging him guilty and after allocutus, the trial court sentenced Foster to five years in prison.

A policeman making his rounds about 12:30 in the morning December 12–13, 1964, noticed "a 1964 Chevrolet two door hardtop" parked a block from the drug store. It bore a Chambers County license, 12–6086.

At two o'clock the officer found the back door of the pharmacy partially open. The panel "about middle ways of the door" was knocked out.

Just before this he had encountered the 1964 Chevrolet on State Highway 14 apparently headed for Loachapoka and Auburn. Two Auburn policemen, alerted by radio, followed the car.

After being pursued, the Chevrolet turned right and its headlights went out. After another turn, it was overtaken.

The defendant was on the right-hand front seat. Near his foot was a brace and bit. A bottle of pills and a pasteboard box (State's Exhibits 7 and 9) were found on a search of the defendant's person.

Mr. H. C. Reynolds stated (R. 28, 29) that in his best judgment these articles were from his stock at the drug store. Mr. Guy Parnell, graduate pharmacist, employed as an assistant State toxicologist, had compared the material found on the bit with wood from the panel broken in the door at the drug store.

Parnell testified that the substance on the bit and on the wood had the same physical properties.

Some testimony came in as to drugs found on the person of the driver of the car and between him and the defendant on the front seat. No admissions were made by the defendant or his coindictee.

Appellant's first proposition of law is:

"It was error to allow evidence of the acts of William Quinton Foster, the driver of the automobile in which Defendant was a passenger at the time of his arrest, to be received without first establishing a conspiracy between the said driver and the Defendant.

"6 Ala. Digest, Criminal Law, Section 427 and cases cited therein."

■■ Among the cases cited by reference is Smith v. State, 8 Ala.App. 187, 62 So. 575 (from which we quote infra), where it is pointed out that the order of proof is discretionary with the trial judge. See Snoddy v. State, 20 Ala.App. 168, 101 So. 303.

■■■ We consider that the jury was entitled to infer that the defendant and the driver of the car were jointly involved as principals in the burglary.[1] Hence, the lights going off when the car was followed, evasive turns in direction, and fruits of stealing—all imputable to the driver as his acts, properly came into evidence against the defendant.

Judge McElroy, The Law of Evidence in Alabama (2d Ed.), § 195.03(7), Flight of Coconspirator, says:

"Evidence of the flight of a coconspirator or his suspicious departure from the community is not ordinarily admissible against the accused, unless shown to have been with accused's connivance or approval. Lowman v. State, 161 Ala. 47, 50 So. 43, syl 4.

"However, if the coconspirator's flight is so closely connected in time and place with the crime as that a picture of the commission of the crime would be incomplete without proof of the coconspirator's flight from the scene of the crime, then evidence of such flight is admissible against the accused. Densmore v. State, 25 Ala.App. 133, 141 So. 914, syl 2 (coconspirator's running from still when raiding officers appeared; admitted as 'part of the res gestae.')"

This latter paragraph logically extended also covers one co-conspirator operating a vehicle in which another is a passenger, particularly where it is permissible to infer, as it is here, that the flight was immediately after the breaking and entering. When we note their having the brace and

---

1. Code 1940, T. 14, § 14, provides: The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

bit and the drugs in the car with them, the principle of admissibility is additionally re-inforced.

The common purpose—as may be inferred from the verdict—of the breaking and entering with intent to steal was not intended to come to rest until the stolen goods were parceled out. We view the ride in the car as serving both as a means of escape and to carry off the fruits of theft.

█ Each conspirator, doubting a solitary crime to be feasible, by confederating appoints all the other parties his agent. The deed done, the reality of the wicked idea is still a fact, evidence of which—proved directly or circumstantially—continues to be receivable in the trial, even though cumulative.

Leaving the question of mutual agency properly to the jury, the trial judge in his general direction charged in part:

> "Now, Gentlemen of the Jury, the evidence for the State shows that some of these—that one of these bottles, I believe, and this box were taken off the person of the Defendant, and the other bottle, one bottle taken off the seat of the car, and then another bottle or bottles off of the driver of the car. And the Court is charging you that you should not consider as evidence against this Defendant any article found on the person of another, that is, the driver of the automobile, unless you further find from the evidence, beyond a reasonable doubt, that the Defendant in some way was connected with such articles found on the person of another, or had knowledge that it was unlawfully in the possession of the driver."

To which the defendant took exception as follows:

> "THE COURT: What says the Defendant.

"MR. TORBERT: If it please the Court we except to that part of the oral charge wherein the Jury was told that on the articles taken from the possession of some party other than the Defendant—

"THE COURT: That is the driver.

"MR. TORBERT: From the driver, could not be considered against this Defendant unless they were first reasonably satisfied—

"THE COURT: Satisfied beyond a reasonable doubt.

"MR. TORBERT: Well, I don't remember which you said, you may have said that. That if they were satisfied from the evidence that this Defendant knew that these articles were in the possession—

"THE COURT: Unlawfully.

"MR. TORBERT: Is that what you said. Of the driver, on this basis, if it please the Court; the fact that he might have known that these articles were in his possession unlawfully, but would not make him a conspirator or either, in anyway responsible for an act which had already been committed.

"THE COURT: Well, that is your exception.

"MR. TORBERT: Yes, sir."

The acts of the driver (at least until the car was halted)[2] were admissible against the defendant. Hunter v. State, 112 Ala. 77, 21 So. 65. In Smith v. State, supra, we find a statement which fits this case.

> "* * * The rules of evidence, however, applicable to the establishment of a conspiracy, are the same, of course, whether the parties are charged and being tried for the conspiracy itself or for

---

2. Since the police frustrated continuance of the "conspiracy" before sharing of the loot, this point in time becomes the boundary marking off admissible and inadmissible acts and admissions of one against the other.

the crime committed in execution or attempted execution of it.

"It has been repeatedly held that it is not necessary, in order that the fact of the conspiracy may be established, that it should be proved by evidence of an express agreement or compact between the alleged conspirators, or by direct evidence of any agreement or compact; but that it may be proved inferentially, or by circumstantial evidence. Conspiracies from their very nature are usually entered into in secret, and are consequently difficult to be reached by positive testimony, which renders it peculiarly necessary and proper to permit them to be inferred from circumstances. Morris v. State, 146 Ala. [66] 88, 41 South. 274. Nor need it be shown that there was a prearrangement to do the specific wrong complained of. Pierson v. State, 99 Ala. [148] 152, 13 South. 550.

"The acts, declarations, and conduct of each conspirator in promotion or in relation to the object or purpose of the conspiracy, being considered in law as the acts, declarations, or conduct of each co-conspirator, may be given in evidence against him; but in order to justify the admission of such evidence by the court there must be proof aliunde sufficient to show prima facie a conspiracy, which is for the court to determine. McAnally v. State, 74 Ala. [9] 16. When this has been determined in favor of the state, and the evidence mentioned is admitted, it then, of course, becomes a question for the jury to finally decide from all the evidence—these acts, declarations, and conduct of the conspirators coupled with the evidence aliunde—whether or not the conspiracy alleged in fact existed. Their verdict, so finding, is, of course, beyond our province to review. We can only determine on proper objection and exception whether the court erred in admitting the evidence of the acts, declara-

tions, and conduct of the alleged co-conspirators, which rests solely upon the question as to whether or not the evidence independent of such acts and declarations warranted an inference of the conspiracy.

"We are of opinion that it all taken and considered together does in this case; and that the court properly admitted proof of the separate acts of Bud Smith. And while the general rule is that such evidence aliunde—a sufficient amount at least to show prima facie a conspiracy— should precede in the order of proof the acts, declarations, and conduct of the co-conspirator; yet we do not regard this. as an ironclad rule, but are of opinion that it, fixing the mere order for the introduction of evidence, was established for the purpose rather of expediting the business and saving the valuable time of the trial court than of protecting or securing any supposed right the defendant might have. * * *"

There are cases which extend the res. gestae principle so as to make admissible acts of one of plural offenders against his fellow felons even up to the division of the spoils. Crittenden v. State, 134 Ala. 145,. 32 So. 273. This rule logically links means. to end, embracing the thought (conspiracy) with the completed deed (actus reus) in the light of its purpose (e. g., animus lucrandi).

■ The various exhibits were sufficiently linked (Jemison v. State, 40 Ala. App. 581, 120 So.2d 748) to the defendant or his co-indictee to satisfy the requisites of establishing an implication that the stolen goods were stolen in the course of the burglary. Swoope v. State, 19 Ala.App. 254, 96. So. 728; Miller v. State, ante p. 287, 189 So.2d 576 (March 15, 1966).

We have carefully examined the record under Code 1940, T. 15, § 389, and consider the judgment below is due to be

Affirmed.