[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1174 
The appellant was indicted for the first degree murder of Mrs. Rudene Edwards of Phenix City, Alabama. Punishment was fixed at life imprisonment. This court has previously reviewed the convictions of two of the alleged accomplices of the appellant: Austin v. State, 354 So.2d 40 (Ala.Cr.App. 1977) andAnderson v. State, 354 So.2d 1156 (Ala.Cr.App. 1977).
On this appeal four points are presented for our consideration and review: (1) The sufficiency of the evidence to support a conviction, (2) the admissibility of statements made by an alleged co-conspirator prior to and after the commission of the charged crime, (3) the admissibility of statements allegedly made by the appellant concerning the commission of other crimes than the one charged, and (4) the admissibility of the circumstances of a prior conviction of the appellant.
On the 20th of October, 1976, the bludgeoned body of Mrs. Edwards was found in her home in Phenix City, Alabama. Death *Page 1175 
resulted from multiple blows to the head. The house had been ransacked. Apparently robbery was the motive for the murder for Mrs. Edwards had recently recovered $66,450.00 in a civil law suit which she had brought against the federal government. This fact was well publicized in the locality. Because the Federal Bureau of Investigation had originally seized this same amount from her safe deposit box in the course of a gambling investigation, Mrs. Edwards' attorney had advised her not to put the money back in the bank.
There were no eyewitnesses to the actual murder, and the state did not contend that the appellant personally killed Mrs. Edwards. The evidence linking the appellant to the murder is circumstantial and almost all of it came from prostitutes and petty thieves. Though indirect and circumstantial, the web of guilt was so finely woven around the appellant as to leave no reasonable doubt of his participation in and responsibility for the murder of Mrs. Edwards. Because of the volume and nature of the evidence and our function in reviewing a case to determine the sufficiency of the evidence, we will only summarize those portions of testimony which tend to implicate the appellant.
At 2:30 o'clock on the morning of October 20, 1976, a neighbor heard Mrs. Edwards' dog barking and the sound of someone running. Mrs. Edwards' body was discovered later that same morning at 7:00 o'clock by another neighbor. The intruders had taken Mrs. Edwards' jewelry and a police scanner.
Sarah Rezek was a local prostitute in Columbus, Georgia, who "dated" the appellant from late August until late November of 1976. On three separate consecutive Sunday afternoons or nights she overheard the appellant discussing the robbery of Mrs. Edwards. On October 3, 1976, she overheard a conversation between the appellant, Ronnie Anderson, Andy Austin, and others in her home in Columbus. The appellant stated that he knew of a $50,000.00 "score" in Phenix City and indicated that Mrs. Edwards was the score to which he was referring. He also stated that "some people" had come to him in the past to borrow some guns for this very same job but that he would not let them have the weapons because Bobby Smith (Mrs. Edwards' son) was a friend of his. On the following Sunday night, October 10th, the appellant again stated that there was $50,000.00 sitting "over there" but that he could not get it because the people knew him.
On the Sunday night of October 17th, the appellant stated in response to Anderson's comment that he wasn't making enough money in "boosting" (shoplifting) that "the $50,000 was sitting across the river; why don't you go over there and get that".
On the afternoon of October 19th, Anderson borrowed a Colt .38 pistol which the appellant had given to Ms. Rezek. Anderson and Austin then left in Ms. Rezek's automobile. The testimony indicates that the appellant did not know that Anderson had Rezek's pistol. When he found out that Anderson had borrowed her car the appellant told Ms. Rezek that she was going to keep on letting them use her car and they were going to get off and do something and get caught at it and she was going to be put right in the middle.
Ms. Rezek, in an attempt to get back her pistol, telephoned Anderson at a local night club later that night. Anderson told her "not to worry about it; that something was going to go down" and that he might need it.
Penny Hatcher was also a prostitute in Columbus, Georgia. She testified that she spent the entire night of October 19th with the appellant at his house and that they stayed awake the entire time. Around 4:00 or 4:30 o'clock on the morning of October 20th, the appellant received a telephone call and told Ms. Hatcher that they had "screwed up" and became "real upset". This was the only contact they had with the outside world that night. Sometime between 8:00 and 9:00 o'clock on the morning of the 20th, the appellant called Ms. Rezek and told her about someone having been beaten. Ms. Rezek testified that the appellant called her around ten or fifteen minutes to nine that morning and asked her if *Page 1176 
Anderson and Austin had returned her car. He told her that Bobby Smith's mother had been found beaten to death at her home. When Ms. Rezek asked the appellant how he knew, he told her that he was at a friend's house down the street from Mrs. Edwards.
Anderson returned Ms. Rezek's car later that Wednesday morning around 11:00 o'clock. He asked if she had heard from the appellant and told her that if she contacted him "to tell him that they needed to get in touch with him bad; that they had that stuff or those things for him".
On the night of Thursday, October 28, 1976, Ms. Hatcher had another "date" with the appellant. At his house the appellant showed her some men and women's jewelry that was on a dresser in his bedroom. This jewelry generally matched the description of that owned by Mrs. Edwards and found missing following her death. Ms. Hatcher also noticed a police "Bear-cat" scanner in the appellant's bedroom about which the appellant stated, according to Ms. Hatcher, that "a lot of people would like to know where it was because a woman had been beaten or hurt over it". The appellant then stated that he would kill anyone or kill himself before he would go back to prison.
Deborah Lynn Vella lived with Ms. Rezek from the last weekend in September until November 23rd. On October 3rd she also heard the appellant and several others, including Anderson and Austin, talking about robbing some "old lady that lived over in Phenix City". The appellant stated that he knew a score in Phenix City, Bobby Smith's mother; and that there was supposed to be $50,000.00 in her house because Mrs. Edwards had removed the money from her safe deposit box and hidden it in her house so the "Feds" could not get it. Ms. Vella heard "some more" on the next Sunday (October 10th).
She testified that on the following Sunday, October 17th, "Whiskers", the appellant, was getting "a little bit mad" and said that the "money wasn't going to stay over there forever and they were going to have to go over there and get it or either it was going to be gone". When Anderson said that he wanted the money split five ways, the appellant said that it would be split three ways and indicated that one-third would go to Anderson and Austin, one-third to James Smith and Jimmy Don Hall and one-third for himself. The appellant told Anderson and Smith that he would be "over there"; that they could bring "the stuff" to him and that he would take care of it until he got rid of it and then they would also divide that money three ways. When Smith told Anderson that "we will have to kill that old lady because she is not going to give up the money like that", the appellant laughed and went to bed.
Ms. Vella stated that on November 21st she was at Austin's father's house in Phenix City and the appellant was mad because Austin and Anderson had gotten the jewelry and "stuff" from his house and taken it to Albany and tried to sell it. At that time the appellant said that "ain't nobody going to take that stuff; I am the only one that can sell it and I will get rid of it when I get good and ready". Ms. Vella also stated that Lamar Jackson told her that Austin and Anderson killed Mrs. Edwards; that Anderson also told her that he killed Mrs. Edwards and that the $50,000.00 wasn't over there and if it was he couldn't find it. She testified that although the appellant never said that he killed Mrs. Edwards, that he did tell her that "whenever you kill somebody, you always kill them in the head because if you don't kill them dead, you are sure enough going to make them crazy". On November 22nd, Austin admitted to her that he killed Mrs. Edwards.
The appellant testified in his own behalf and denied making any statement concerning a $50,000.00 score in Phenix City. He denied any knowledge of any plan to kill or rob Mrs. Edwards. His mother testified that she lived in Phenix City and was a neighbor of Mrs. Edwards; that after the body was discovered, she told her son of the murder when he came to her house that morning about 8:30 o'clock.
Among the other witnesses called by the appellant were Ronnie Anderson and Andy *Page 1177 
Austin, both under conviction for the murder of Mrs. Edwards, who testified in support of the appellant and contradicted the testimony of Ms. Rezek and Ms. Vella.
Although the appellant testified that he purchased the police scanner from Butch Martin, in the state's rebuttal Martin testified that he never sold the appellant any scanner.
 I
The appellant's motion to exclude the evidence presented by the state was properly overruled. Under the law of this state, it is settled that any word or act contributing to the commission of a felony, intended to incite or encourage its accomplishment, makes one a co-conspirator, and if the purpose of the common enterprise is carried out, each is guilty of the felony committed. McMahan v. State, 168 Ala. 70, 53 So. 89
(1910).
Alabama case and statutory law has long recognized that when two or more persons join in an unlawful enterprise each is responsible for everything which may consequently and proximately flow from the unlawful purpose, whether committed by the accused or not, and whether specifically intended or not. Stokley v. State, 254 Ala. 534, 49 So.2d 284 (1950);Leonard v. State, 43 Ala. App. 454, 192 So.2d 461 (1966); Ray v.State, 32 Ala. App. 556, 28 So.2d 116 (1946); 6 Alabama Digest, Criminal Law, Number 59; Title 14. Section 14, Code of Alabama 1940, Recompiled 1958. All persons concerned in the commission of a felony, directly or indirectly, are equally guilty.Prophett v. State, 25 Ala. App. 20, 141 So. 257 (1932). And, it is not necessary that the aider be present. Griffin v. State,26 Ala. App. 292, 158 So. 773 (1935). Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, brings the accused within the statute that makes each person concerned in the commission of a felony, directly or indirectly, a principal. Staggs v. State, 51 Ala. App. 203, 283 So.2d 652
(1973). In order that the fact of a conspiracy may be established, it need not be proved by evidence of an express agreement or compact between the alleged conspirators, or by any direct evidence of any agreement or compact. It may be proved inferentially, or by circumstantial evidence. Conspiracies from their very nature are usually entered into in secret, and are consequently difficult to be reached by positive testimony, which renders it peculiarly necessary and proper to permit them to be inferred from the circumstances.Smith v. State, 8 Ala. App. 187, 197, 62 So. 575 (1913); Mullerv. State, 44 Ala. App. 637, 218 So.2d 698, cert. denied,283 Ala. 717, 218 So.2d 704 (1968); 4 Alabama Digest, Conspiracy, Number 47.
The evidence presented by the state revealed that the appellant suggested and encouraged others, especially Anderson and Austin, to "go over to Phenix City and get the $50,000" from Mrs. Edwards. The appellant was to receive one-third of the proceeds and to "get rid" of the "stuff" that his confederates brought him. From Anderson's statement that they would have to kill "that old lady" to get her money there can be no doubt that murder was contemplated as at least a possibility in the commission of the robbery.
It is clear to this court from the evidence contained in the record that a prima facie case of conspiracy was established. Facts were presented from which the jury could reasonably infer that the appellant actually instigated, coaxed and encouraged others to rob and murder Mrs. Edwards.
 II
The appellant contends that the trial court erred in allowing Sarah Rezek to testify over objection about statements Ronnie Anderson, an alleged co-conspirator, had made to her out of the presence of the appellant with reference to borrowing her car and pistol on the day before the murder.
This argument is without merit for, where proof of a conspiracy exists, any act or statement by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, *Page 1178 
during the existence of the conspiracy and in the furtherance of a plan or design, is admissible against the accused. See Gamble, McElroy's Alabama Evidence, 3rd Ed., p. 410, § 195.03 citing Svirbely v. State, 53 Ala. App. 452, 301 So.2d 219
(1974); Frazier v. State, 48 Ala. App. 210, 263 So.2d 511, cert. denied, 288 Ala. 743, 263 So.2d 516 (1972); Hagood v. State,47 Ala. App. 626, 259 So.2d 679 (1972); Muller v. State,44 Ala. App. 637, 218 So.2d 698, cert. denied, 283 Ala. 717,218 So.2d 704 (1968); Stokley v. State, 254 Ala. 534, 49 So.2d 284
(1950). While this testimony may have been objectionable because it was premature in that proof of the conspiracy should be made before the admittance against the accused of the co-conspirator's statement, the subsequent proof of the conspiracy cures any error in prematurely admitting the statement. Foster v. State, 43 Ala. App. 435, 191 So.2d 523
(1966); Snoddy v. State, 20 Ala. App. 168, 101 So. 303 (1924);Morton v. State, Ala.Cr.App., 338 So.2d 423, cert. denied, Ala., 338 So.2d 428 (1976).
 III
Generally a co-conspirator's act or statement after the commission of the crime is not admissible against the accused unless it is reasonably inferable from the evidence that the conspiracy embraced the disposition, or the division among the conspirators, of the fruits of the crime. Foster v. State,43 Ala. App. 435, 191 So.2d 523 (1966); Crittenden v. State,134 Ala. 145, 32 So. 273 (1902); Scott v. State, 30 Ala. 503. (1857). The common purpose — as may be inferred from the verdict — of the robbery was not intended to come to rest until the stolen goods or the "stuff" had been delivered to the appellant, sold by him and the proceeds divided. Therefore the testimony of Sarah Rezek and Deborah Vella concerning statements made by Anderson after the murder of Mrs. Edwards inquiring as to the appellant's whereabouts and the fact that they needed to see him and had some "stuff" for him was properly admitted.
 IV
The appellant also contends that the trial court erred in allowing Ms. Rezek to testify over objection (1) that the appellant told her prior to the murder about two "jobs" that he planned to commit and (2) that the appellant told her about plans to kill Jimmy Don Hall three days after the murder.
 A.
Ms. Rezek testified
 "He (the appellant) said that if this other man didn't come through with buying me a bar, that by the first of January he would be able to — that he had two jobs planned between then and the first of the year that would put him on easy street and that none of us would have to worry about anything. He said that one of them that he was going to have to go through some other people to have it done and the second one, that he could possibly do it by himself but if he needed any help, that he needed just one other person and he didn't say who the other person would be."
The record discloses no objection or motion to exclude. The error, if any, is thereby deemed waived and objection cannot be initially raised on appeal. Wilder v. State, 52 Ala. App. 157,290 So.2d 225 (1974); Jones v. State, 52 Ala. App. 184,290 So.2d 251 (1974); Wilson v. State, 52 Ala. App. 680,296 So.2d 774, cert. denied, 292 Ala. 759, 296 So.2d 778, cert. denied,419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974).
 B.
Ms. Rezek also testified that
 "A. On a Saturday morning after Mrs. Edwards was killed and Lynn came to the house to pick up my boy to play golf, he offered me $500.00 to get him off to kill him.
 "MR. RONEY: We object your Honor and ask for a ruling. It is not material to this case and has nothing to do with it.
 "MR. BENTON: If it please the Court, that is part of the substance of the case *Page 1179 
itself. This is one of the people that has been mentioned as a co-defendant who is not incarcerated in the penitentiary in Georgia.
 "MR. RONEY: This has nothing to do with this case, your Honor; this man has not been connected with a Mr. Hall as such.
 "THE COURT: Not as yet. Again, I will have to reserve ruling on it. This is Saturday approximately the 23rd.
* * * * * *
 "Q. Would you tell us please what that conversation consisted of at that time?
 "A. We were in the dining room and he come to pick up my boy to play golf and we were talking about the fight at My Place the Saturday night before and we discussed that. And then Lynn told me that it was a hell of a thing for him and James Smith — that they killed that man in Bibb City for $25.00 and he told me that it would be worth $500.00 to me if I could get Jimmy Don Hall off without anybody knowing to a place that he would designate and he would be there and he would make sure that I wouldn't be involved in it no way where he could kill Jimmy Don Hall."
At the close of the state's case in chief the trial judge overruled defense counsel's objection.
Jimmy Don Hall was one of the five people who were to share in the proceeds from the robbery. Testimony had previously been adduced without objection that he had received sentences of life and death for a robbery and murder in Columbus, Georgia. Under the circumstances of this case it is our opinion that the efforts of the appellant, after the commission of the charged crime but during the life of the conspiracy, to murder one of his co-conspirators indicate a consciousness of guilt and is admissible as evidence against him. Any conduct or declaration of a person having relation to the offense he is suspected of or charged with, indicating a consciousness of guilt, is admissible evidence against him. Palmer v. State, 15 Ala. App. 262,265, 73 So. 139, cert. denied, 198 Ala. 693, 73 So. 1001
(1916); Britton v. State, 15 Ala. App. 584, 74 So. 721 (1917);Montgomery v. State, 17 Ala. App. 469, 86 So. 132 (1921);McAdory v. State, 62 Ala. 154, 160 (1878). Conduct involving the intimidating or killing of witnesses reflects a consciousness of guilt. Brown v. State, Ala.Cr.App.,339 So.2d 125 (1976). We do not view the efforts of the appellant to murder a confederate as actions "perfectly consistent with a consciousness of innocence and a resentment of any implication of guilt" as those found in Cobb v. State, 20 Ala. App. 3,100 So. 463 (1924). Any indications of conscious guilt arising from the conduct, demeanor, or expressions of an accused are legal evidence against him. "The law can never limit the number or kind of such indications." Johnson v. State, 17 Ala. 618, 624
(1850). "The number of such indications it is impossible to limit, nor can their nature or character be defined." McAdoryv. State, 62 Ala. 154, 159 (1878).
 V
On direct examination of the appellant, defense counsel adduced testimony from the appellant that he had been convicted of aggravated assault in 1971, received a five year sentence and served thirty-two months in the regional state penitentiary of Georgia. On cross examination the state introduced the appellant's record of conviction into evidence without objection. The following then occurred:
 "Q. (District Attorney). Who was the injured party in that?
"A. I don't believe there was an injured party.
"Q. Sir?
 "A. I said I don't believe there was an injured party.
 "MR. RONEY (Defense Counsel): Your Honor, we are going to object to going into the circumstances surrounding the conviction; he said he pled guilty to aggravated assault.
 "MR. BENTON: Mr. Conley said he would need his glasses; we will just let him read the exhibit that has been introduced.
* * * * * * *Page 1180 
 "A. `Linder Conley and Larry James Davis of the County and State aforesaid with the offense stated aforesaid of aggravated assault; for that the said Linder B. Conley and Larry James Davis in the County aforesaid on the 13th day of November in the year of our Lord, 1970, unlawfully and with force and arms made an assault on the person of Jimmy Edward Gresham.'
 "Q. All right, sir; you entered a plea to aggravated assault but the original charge was assault with intent to rob with arms, wasn't it?
 "A. This is the first I have seen of this. They showed me no other papers other than the one I have in my pocket."
The appellant contends that error was committed when the appellant was "required" over objection to read the record of his conviction which had already been introduced into evidence, as such reading was highly prejudicial to the appellant.
Initially we note that the general rule is that, in cross examining a witness as to his conviction of a crime involving moral turpitude, one cannot go beyond the name of the crime, the time and place of conviction, and the punishment. It is impermissible to ask about or prove further details such as the name of the victim and general aggravating circumstances.Garvin v. Robertson, 289 Ala. 60, 265 So.2d 602 (1972); Brimerv. State, 27 Ala. App. 75, 165 So. 788 (1936); Latikos v. State,17 Ala. App. 655, 88 So. 47 (1921).
From the record it appears that the trial court sustained defense counsel's objection. Therefore the appellant has no cause to complain in the absence of a motion to exclude or a request for instructions.
Additionally the exhibit containing the objectionable material had already been admitted into evidence without objection from defense counsel. There being no objection or qualification to the admission of the exhibit, its contents were properly in evidence — for the jury's consideration and subject to comment by counsel.
Defense counsel made no motion to strike or exclude the objectionable matter. There was no motion for a mistrial. In the context of this case, we do not view the comments to be so prejudicial as to be ineradicable. Therefore, for all of these reasons, the action of the trial court in sustaining the objection of defense counsel was proper.
We have responded to the arguments in appellant's brief. Additionally we have searched the record for error and have found none. Therefore the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.