683 So.2d 517 (1996)
STATE of Florida, Appellant,
v.
John Daniel ADAMS, Appellee.
No. 95-04407.
District Court of Appeal of Florida, Second District.
June 28, 1996.
Robert A. Butterworth, Attorney General, Tallahassee, and Deborah F. Hogge, Assistant Attorney General, Tampa, for Appellant.
Richard D. Mars, Bartow, for Appellee.
LAZZARA, Judge.
The State of Florida appeals a pretrial order in which the trial court excluded from evidence as to count one of the information various statements made by the appellee to law enforcement officers because the state could not establish the corpus delicti of the crime charged in that count, "deliberately assisting another in the commission of selfmurder," a violation of section 782.08, Florida Statutes (1993). The state also challenges that part of the order in which the trial court dismissed count two of the information, charging the appellee with being a principal to the common law crime of suicide under the carry-over provisions of section 775.01, Florida Statutes (1993), based on its determination that the "common law crime of suicide is an anachronism and is not part of the substantive *518 law of the state of Florida."[1] We have jurisdiction to determine the correctness of both aspects of the trial court's order in accord with Florida Rules of Appellate Procedure 9.140(c)(1)(A) and (B).
We reverse that part of the order excluding the appellee's statements to law enforcement because we conclude that the state presented substantial evidence establishing the corpus delicti of the crime of assisting self-murder. We affirm, however, the dismissal of count two, although for a different reason.
The parties presented the following testimony for the trial court's consideration in connection with the appellee's motion to exclude his statements from evidence. On March 14, 1995, the victim, who was specifically identified, and his longtime neighbor were talking over the fence separating their residences. The appellee, who was visiting the victim, was also present. According to the neighbor, the victim did not appear intoxicated and seemed to be in a good mood although the neighbor assumed something was bothering the victim because he wanted to talk. After several minutes, the neighbor returned to his home.
Approximately fifteen minutes later, a man named Larry went to the neighbor's home and advised him that the victim was dead. The neighbor immediately proceeded next door to investigate and found the victim lying on the ground with blood on his head and a shotgun beside him. The neighbor checked for a heartbeat and determined for himself that the victim was dead. The neighbor then approached the appellee, who was standing on the victim's porch, and asked him what happened and where the victim obtained the shotgun. According to the neighbor's testimony, the appellee replied that the victim "asked me for the gun because he wanted to blow his head off ... So I gave him the gun. I didn't think he was going to do it."
Shortly thereafter, law enforcement officers from the Polk County Sheriff's Office arrived at the scene to conduct an investigation and ultimately determined that the victim had committed suicide by shooting himself in the head with a shotgun. During the course of their on-scene investigation, different officers interviewed the appellee on several occasions because he was the only eyewitness to the incident. According to the officers' collective testimony, the appellee told them that the victim was depressed about his financial situation, stated he felt like killing himself, and asked for the appellee's shotgun. The officers further testified that the appellee advised them that he then gave his loaded shotgun to the victim and essentially told the victim that if he wanted to kill himself, "don't talk about it, do it."
After the investigating officers reported the substance of the appellee's statements to their on-scene supervisor and an assistant state attorney who had also responded to the scene, the appellee was arrested for assisting in the self-murder of the victim. The appellee made no statements following his arrest. As noted, the state ultimately charged the appellee with one count of assisting selfmurder, one count of being a principal to the common law crime of suicide, and one count of manslaughter by culpable negligence.
In this appeal, the state first contends that the trial court erred in failing to consider the appellee's statement to the neighbor in determining whether the corpus delicti of assisting self-murder had been sufficiently established to allow into evidence the statements the appellee made to law enforcement, citing State v. Snowden, 345 So.2d 856 (Fla. 1st DCA), cert. denied, 353 So.2d 679 (Fla. 1977). We agree with this contention because a careful examination of the trial court's comprehensive fact-finding order reveals that this critical statement was never considered. We also agree that Snowden controls the disposition of this issue.
In Snowden, the court confronted an issue strikingly similar to the issue in this case. There the court undertook an analysis of whether the defendant's statements to her neighbor arose out of the res gestae, which it defined "as the circumstances, facts and declarations *519 which grow out of the main fact and serve to illustrate its character, and which are so spontaneous and contemporaneous with the main fact as to exclude the idea of deliberation or fabrication." Id. at 860 (emphasis added) (footnote omitted). It emphasized, however, that the word "contemporaneous" was "not to be taken in its strict meaning and it is not necessary that the acts or declarations should be precisely concurrent in point of time with the main facts, nor is time the only criterion for determining whether a thing said or done is part of a given transaction." Id. (emphasis added). The court observed, instead, that the ultimate test for admissibility centered on "spontaneity" and a "logical relation to the main event." Id.
In its analysis, the court in Snowden then drew a sharp distinction between a res gestae statement and admissions and confessions, noting that "the terms are not synonymous," that "a res gestae statement is admissible notwithstanding the fact that it may not be admissible as a confession or an admission," and that "[s]tatements admitted into evidence as part of the res gestae constitute original evidence." Id. at 859-860 (emphasis added) (footnotes omitted). The court concluded its analysis by holding that the defendant's statements to her neighbor were part of the res gestae and, as such, should have been considered by the trial court as "original evidence" in determining whether the corpus delicti of manslaughter had been sufficiently proven. Id. at 860. Accord Knight v. State, 402 So.2d 435, 436 n. 1 (Fla. 3d DCA 1981) (recognizing the rule of Snowden that a defendant's res gestae statement can supply proof of the corpus delicti); Davis v. State, 582 So.2d 695, 700 (Fla. 1st DCA 1991) (holding that defendant's res gestae statement constituted one aspect of "nonconfession evidence" establishing corpus delicti).
In accord with Snowden, we conclude that the appellee's statement to the neighbor was a res gestae statement and, as such, should have been considered by the trial court as "original evidence" in determining whether the state had proven the corpus delicti of the crime of assisting self-murder.[2] We also conclude that when this statement is so considered, along with the other evidence presented to the trial court, the state met its preliminary burden of establishing by substantial evidence the existence of each element necessary to show the commission of the crime charged, thereby rendering the appellee's statements to law enforcement admissible into evidence. See, e.g., Burks v. State, 613 So.2d 441 (Fla.1993).[3]
We approve, in that regard, the trial court's legal conclusion that the corpus delicti of assisting self-murder consists of (1) the fact of the death of the decedent by suicide, (2) the fact that another assisted in the suicide of the decedent, and (3) the identity of the decedent. As to the second element, we specifically note our agreement with the trial court's reasoning, based on an analysis of the corpus delicti of homicide law, that in establishing the corpus delicti in this case, "instead of showing that the death was `caused by the criminal agency of another,'" the state must "demonstrate that `another assisted in the suicide of the deceased.'" It follows from this analysis that in establishing this aspect of the corpus delicti of assisting self-murder, the state need not establish the element of "deliberateness" before the appellee's statements to law enforcement are admissible. Cf. Jefferson v. State, 128 So.2d 132, 135-136 (Fla.1961) (no requirement in first-degree murder case that proof establish, *520 independent of defendant's admission or confession, actual premeditation).[4]
Measured against these standards, the facts in the record clearly establish the existence of the corpus delicti of assisting self-murder. The victim was specifically identified and the evidence demonstrated that he had killed himself by a self-inflicted gunshot wound to the head, factual issues which the appellee does not dispute. More important, based on the appellee's statement to the neighbor, it is readily apparent that the state proved that the appellee assisted the victim by furnishing him the instrument the victim specifically requested to commit self-murder. The fact that the appellee also told the neighbor that he did not think the victim would follow through with his announced intention to kill himself does not diminish this determination because we are not concerned at this juncture with whether the state can prove its case beyond a reasonable doubt, especially the critical element of "deliberateness." See State v. Allen, 335 So.2d 823, 825 (Fla.1976) (state's burden of proof "beyond a reasonable doubt" is required to establish defendant's guilt, not to authorize admission of confession). Our narrow focus, instead, is on whether the state can prove the corpus delicti of assisting selfmurder, as just defined, by substantial evidence, a standard which "does not require the proof to be uncontradicted or overwhelming," before the appellee's statements to law enforcement can properly be admitted into evidence. Id.[5]
We pause at this juncture to dispel any notion that by our reliance on Snowden, a case which predates Florida's Evidence Code,[6] we are somehow resurrecting an outmoded and oft-criticized rule of evidence[7] not found in the Code. As the following analysis will demonstrate, various components of the res gestae rule, including those discussed in Snowden, were carried over into the Code and, therefore, the rule as now embodied in the Code still lives on as a part of Florida's law of evidence.
We begin our analysis with a recognition of our previous acknowledgement that "[t]he former res gestae exception to the hearsay rule is not included in the new evidence code." State v. Johnson, 382 So.2d 765, 766 (Fla. 2d DCA 1980). As we further noted in Johnson, however, "[u]nder the new code, the res gestae rule has been broken down into its various components." Id. Other courts have subsequently recognized this concept. See, e.g., Jano v. State, 510 So.2d 615, 616 (Fla. 4th DCA 1987) (exceptions under sections 90.803(1) (spontaneous statement) and 90.803(2) (excited utterance), Florida Statutes (1979), encompass evidence frequently considered under what was referred to as the res gestae exception prior to the adoption of the Florida Evidence Code), approved, State v. Jano, 524 So.2d 660, 661 (Fla.1988) (excited utterance exception not new theory of Florida evidence but one of a group of exceptions subsumed under the old term of res gestae); Monarca v. State, 412 So.2d 443, 445 (Fla. 5th DCA 1982) (general philosophies of the res gestae exception to hearsay rule carried over into present evidence code, section 90.803, Florida Statutes (1979)); Alexander v. State, 627 So.2d 35, 43 (Fla. 1st DCA 1993) (testimony improperly excluded because admissible under the res gestae rule now codified in sections 90.803(1), (2), and (3), Florida Statutes (1991), which define the conditions for admissibility of (1) spontaneous statements, (2) excited utterances, and (3) then existing mental and emotional conditions of the declarant), review denied, 637 So.2d 236 (Fla.1994); Stiles v. State, 672 So.2d 850 (Fla. 4th DCA 1996) *521 (agreeing with analysis of Alexander). Thus, as one well-recognized and oft-cited commentator on the law of Florida evidence has so aptly observed, "instead of including the phrase res gestae, or including a res gestae exception, the Code specifically enumerates each of the exceptions which were previously admissible under the res gestae label." Ehrhardt, Florida Evidence, § 803 at 598 (1996 ed.) (footnotes omitted).[8]
It is readily apparent from this analysis, therefore, that to the extent that the evidentiary doctrine of the res gestae has been incorporated into specific provisions of the Florida Evidence Code, it retains its vitality. We conclude, in that regard, as previously noted, that the specific provision justifying the admission of the appellee's statement to the neighbor is section 90.803(1), relating to the admissibility of a spontaneous statement, the governing principles of which were foreshadowed in Snowden. Under Snowden, and as now required by section 90.803(1), the appellee's statement to the neighbor clearly arose from the main event of the victim's suicide; described and explained the circumstances of that event; was made shortly after the suicide, while the circumstances surrounding that tragic event were still unfolding, so as to be contemporaneous with that event; and, more important, was spontaneously made under circumstances precluding deliberation or fabrication. See J.M., 665 So.2d at 1137 (to be spontaneous, statement must be made without declarant first engaging in reflective thought). Furthermore, the fact that the appellee made the statement in response to the neighbor's questions does not, on this record, diminish its spontaneity. See McGauley v. State, 638 So.2d 973 (Fla. 4th DCA 1994).
We conclude, therefore, that the principles of Snowden, as now embodied in section 90.803(1), retain their precedential value and may appropriately be used as the basis for determining that the appellee's statement to the neighbor qualifies for admission as a spontaneous statement and, as such, constitutes "original evidence" for the purpose of proving the corpus delicti of assisting selfmurder. See Sunn v. Colonial Penn Ins. Co., 556 So.2d 1156, 1157-1158 (Fla. 3d DCA 1990) (relying on principles of pre-Code case in determining whether statement admissible under sections 90.803(1) and (2)); Alexander, 627 So.2d at 43 (relying on pre-Code cases to justify admission of "res gestae statements" under sections 90.803(1), (2), and (3)); Stiles, 672 So.2d 850 (agreeing with analysis of Alexander); cf. Garcia, 492 So.2d 360 (relying on pre-Code case to independently justify admission of statement under res gestae rule); Hack, 596 So.2d 521 (same).
We reject, however, the state's second contention that the trial court erred in dismissing count two of the information. In doing so, we need not address the correctness of the underlying rationale of the trial court's order that "[c]riminalizing suicide is not consistent with the aims of the modern criminal justice system, modern society and current mores." See U.S. Home Corp. v. Suncoast Utils., Inc., 454 So.2d 601, 604 (Fla. 2d DCA 1984) (declining to address correctness of trial court's application of a particular doctrine because trial court's reasoning is not binding on an appellate court); see also Sheridan v. Respess, 147 Fla. 626, 631, 3 So.2d 704, 707 (1941) (judgment of court below, if correct, will be affirmed though based on reasons inapplicable to the case as made). We undertake, instead, an analysis which is more appropriately tailored to the unique facts of this case.
As we perceive it, the narrow issue in this case is not whether Florida has adopted the common law crime of suicide,[9] but whether it still recognizes the common law crime of *522 being a principal to self-murder such that the appellee could appropriately be charged with this crime under the carry-over provisions of section 775.01. At common law, "if one counseled another to commit suicide, and the other, by reason of the encouragement and advice, killed himself, the adviser was guilty of murder as an aider and abettor, provided he was present when his advice was carried out." State v. Webb, 216 Mo. 378, 115 S.W. 998, 1000 (1909). Accord McMahan v. State, 168 Ala. 70, 53 So. 89, 90 (1910). As we will explain, this common law crime does not exist in Florida because the legislature has clearly supplanted it by enacting section 782.08, which expressly prohibits one person from "deliberately assisting another in the commission of self-murder" and which specifically punishes such conduct as manslaughter.[10]
We begin our analysis of this issue by examining section 775.01, which provides that "[t]he common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this state where there is no existing provision by statute on the subject." Under this statutory provision, our supreme court has held that when the legislature enacts a criminal statute covering the subject matter of a common law crime, the common law crime is abrogated and the newly enacted statute is controlling. State ex rel. Williams v. Coleman, 131 Fla. 892, 180 So. 357 (1938).
Against this backdrop, it is readily apparent that the legislature abrogated the common law crime of being a principal to suicide by enacting section 782.08. The statute directly relates to the same subject matter covered by the common law crime by criminally proscribing and punishing the same type of conduct. Cf. In re Joseph G., 34 Cal.3d 429, 194 Cal.Rptr. 163, 166, 667 P.2d 1176, 1179 (1983) (predominant statutory scheme in the United States is to create a sui generis crime of aiding and abetting suicide which, in some states, is punishable as a unique type of manslaughter). Thus, while we do not adopt the trial court's reasoning in support of its dismissal of count two, we do conclude that dismissal was appropriate in that section 782.08 now controls over the common law within the operational sphere of prosecuting and punishing the conduct of deliberately assisting self-murder. See DeGeorge v. State, 358 So.2d 217, 220 (Fla. 4th DCA 1978).
Accordingly, for the reasons expressed, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded for further proceedings.
THREADGILL, C.J., and SCHOONOVER, J., concur.
NOTES
[1] The state also charged appellee in a third count with manslaughter by culpable negligence pursuant to section 782.07, Florida Statutes (1993). There are no issues regarding that count involved in this appeal.
[2] As we will explain later, under the current evidence code, this statement qualifies for admission as a spontaneous statement under section 90.803(1), Florida Statutes (1993), which defines such a statement as one "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or shortly thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness." As interpreted, this provision embodies the principles of Snowden in that the admissibility of a spontaneous statement requires that the factors of contemporaneity and spontaneity relating to the perceived event must coalesce so as to preclude the element of deliberation or fabrication. See J.M. v. State, 665 So.2d 1135, 1137 (Fla. 5th DCA 1996).
[3] We emphasize that the state will still have to satisfy this same burden at trial before the trial court can properly admit these statements for the jury's consideration.
[4] Of course, at the conclusion of all the state's evidence at trial, there must be proof beyond a reasonable doubt of all the essential elements of the corpus delicti, including "deliberateness." See Jefferson v. State, 128 So.2d 132, 135 (Fla. 1961).
[5] Whether these statements are classified as confessions or admissions against interest is not dispositive because this standard now applies to both. Burks v. State, 613 So.2d 441 (Fla.1993).
[6] As noted in In re Florida Evidence Code, 376 So.2d 1161 (Fla.1979), the Code took effect July 1, 1979.
[7] See, e.g., Bryan v. State, 533 So.2d 744, 746 (Fla.1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989).
[8] We note in passing that even after the enactment of the Florida Evidence Code, the res gestae rule has been used as an independent basis for justifying the admission of statements of both victims and defendants. See Garcia v. State, 492 So.2d 360, 365 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986); Hack v. State, 596 So.2d 521 (Fla. 5th DCA 1992); Davis v. State, 582 So.2d 695, 700 (Fla. 1st DCA 1991).
[9] As noted in Corpus Juris Secundum, "[s]uicide was a felony at common law, punishable by forfeiture of the goods and chattels of the offender, and the ignominious burial of his body in the highway." 83 C.J.S. Suicide § 2 at 782 (1953).
[10] To the extent that a common law felony is carried over into the law of Florida, it is no longer treated as a felony but instead is punishable as provided for in section 775.02, Florida Statutes (1993). See B.H. v. State, 645 So.2d 987, 992 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2559, 132 L.Ed.2d 812 (1995).